JOSEPH PIGEON'S (representative's) CASE.

Hampden.   September 23, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, BRALEY, SHELDON, & DE COURCY, JJ.

*Workmen's Compensation Act.   Agency.   Evidence,* Declarations of deceased persons.   *Words,* "Court," "Action."

A finding of the Industrial Accident Board under the workmen's compensation act, that an employee came to his death through an injury arising out of and in the course of his employment, stands upon the same footing as the verdict of a jury or the finding of a judge sitting without a jury and is not to be set aside if there was any evidence upon which it could have been made.

If the driver of a dump cart, whose employer is a general teamster and furnishes teams for the use of a city in transporting street sweepings but retains control of the care of his horses, at least to the extent of seeing that they are watered, takes his cart and horse at the noon hour, saying that he will go home to dinner and on the way will water the horse, and, driving toward his home, which is in the direction of the nearest watering trough although at a considerable distance beyond it, is injured fatally by the running away of the horse before the watering trough is reached, it can be found that the driver received the injury that caused his death while in the service of the general teamster and that such injury arose out of and in the course of his employment within the meaning of St. 1911, c. 751, Part II, § 1.

In a case brought before this court by an appeal from a decree of the Superior Court under the workmen's compensation act, questions as to the correctness of rulings of the Industrial Accident Board upon the admission and exclusion of evidence, which appear by the record to have been presented seasonably, will be considered, but the decree will not be reversed for error in this respect unless the substantial rights of the parties appear to have been affected; following the general equity rule, which is broader than the rule that existed in the equity practice of this Commonwealth before St. 1913, c. 716, § 4.

The provision of R. L. c. 175, § 66, that "a declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant," applies to a claim for compensation under the workmen's compensation act, the words "court" and "action" being used in the statute in a comprehensive sense referring to the pursuit of a right in any tribunal of justice.

RUGG, C. J. This is a proceeding under the workmen's compensation act, St. 1911, c. 751.

1. The Industrial Accident Board have found that Joseph Pigeon came to his death through an injury arising out of and in the course of his employment by Vila A. Shaw. The first point argued is whether the finding that he was in the employ of Shaw at the time of the injury was warranted by the evidence. The finding stands upon the same footing as the finding of a judge or a verdict of a jury. It is not to be set aside if there is any evidence upon which it can rest.

There was evidence tending to show that the decedent was in the general employ of Shaw, who on the day in question had sent him with a horse and cart to work for the city of Springfield. Another horse and cart were sent, but without a driver. These carts were used to clean sweepings from the streets. It was the course of work for the decedent to drive one horse and cart to a dump while the other cart was being loaded, so that he was driving one or the other all the time. His general instructions as to

the place and kind of work to be done were given by the superintendent of the city of Springfield. But it was the deceased's duty under his general employment by Shaw (as testified to by Shaw), "to water the horse when he had a chance to water it; it was his duty to water the horse when he had a chance," and that he "had the care of the horse from the time he took it from the barn until he brought it back at night." Just before twelve o'clock on the day of the injury the deceased told the man in charge of the street sweepers in substance that he would take one team and go home to dinner, and on the way to dinner would water the horse. The decedent's home was in the direction of the nearest watering trough, but a considerable distance beyond it. He drove away in that direction, but before reaching the watering trough was fatally injured by the running away of the horse. It is not contended that the deceased had a right to use the horse to go home to his dinner. He carried grain for the horses and it was his duty to feed them during the noon cessation of work. This evidence warranted a finding that Shaw did not lend the decedent absolutely and unqualifiedly into the service of the city of Springfield, but that he retained the general direction of his conduct except in so far as it was surrendered to the city, and that this retention of control included the care of the horses, at least to the extent of seeing that they were watered. It was said by Knowlton, C. J., in *Shepard* v. *Jacobs*, 204 Mass. 110, 112: "In determining whether, in a particular act, he is the servant of his original master or of the person to whom he has been furnished, the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result." Applying this to the evidence at bar, the finding was warranted that so far as the watering of the horse was concerned the decedent was acting as the agent of his general employer and not of the city of Springfield. It was in the performance of his general duty and not in the transportation of material, as to which alone he worked for the city and was subject to its order. It commonly has been held in cases where a horse and driver have been let by a general employer into the service of another that the

driver is subject to the control and therefore is the agent of his general employer as to the care and management of the horse and vehicle. See *Shepard* v. *Jacobs*, 204 Mass. 110 and cases cited at 112; *Hussey* v. *Franey*, 205 Mass. 413; *Corliss* v. *Keown*, 207 Mass. 149; *Waldock* v. *Winfield*, [1901] 2 K. B. 596; *Hunt* v. *New York, New Haven, & Hartford Railroad*, 212 Mass. 102, 107. Cases relied on by the insurance company, like *Hasty* v. *Sears*, 157 Mass. 123, are distinguishable. In that class of cases no property of the general employer was entrusted to the agent to be used in the service of the new employer.

2. The next point argued is that the evidence did not warrant a finding that the injury resulting in the decedent's death arose out of and in the course of his employment by Shaw. As has been pointed out, there was evidence to the effect that it was the decedent's duty to water the horse and that he was on his way to perform that duty at the time of injury. Though he may have had at the same time the purpose to do something else not within the scope of his employment after watering the horse, that fact does not prevent the service actually rendered at the moment from being in the course of his employment. His custody of the horse for the purpose of relieving his thirst was in the performance of the business of his general employer. His service in doing this was not destroyed by his unexecuted intention to abandon his master's business after performing this duty and to take the horse for his own convenience on a journey of his own. This branch of the case is covered by *Hayes* v. *Wilkins*, 194 Mass. 223, and *Reynolds* v. *Denholm*, 213 Mass. 576. See *Fleischner* v. *Durgin*, 207 Mass. 435. *Fitzgerald* v. *Boston & Northern Street Railway*, 214 Mass. 435.

3. A question is raised as to the admissibility of evidence received at the hearing.* Although a proceeding under the workmen's compensation act is not an equity cause, the practice, speaking broadly, follows that prevailing in equity and not that in law. *Gould's Case*, 215 Mass. 480.

It is plain from §§ 7 and 10, Part III of the act as amended by St. 1912, c. 571, §§ 12, 13, that the commission on arbitration shall make rulings of law and that such rulings of law shall

---

* Before the Industrial Accident Board.

be subject to review by the Industrial Accident Board, whose decisions in turn shall be subject to review by the court, and that after the entry of a decree in the Superior Court all proceedings shall be the same as though rendered "in a suit duly heard and determined by said court," except that there shall be no appeal upon findings of fact. Part III, § 11 of the act as amended by St. 1912, c. 571, § .14. In this respect the procedure marked out by the act more nearly conforms to the practice where the hearing is before the court than to that where it is before a master. It was said in *Knowles* v. *Knowles*, 205 Mass. 290, at 292, that "It is the general rule that objections to rulings made by a single judge at the hearing of an equity cause upon the admissibility of evidence can be brought before this court only by exceptions, and not by appeal with a report of the facts found or of the evidence." See, however, now St. 1913, c. 716, § 4. The practice in this Commonwealth as stated in *Knowles* v. *Knowles* differs from that generally prevailing in courts of chancery, the historical reasons for which are to be found in *Dorr* v. *Tremont National Bank*, 128 Mass. 349. The general practice in equity outside this Commonwealth (where there has been no issue framed for a jury) is to consider on appeal questions properly raised as to the admission or exclusion of evidence. But rehearings are not granted for such errors unless it appears that substantial justice requires it. 2 Dan. Ch. Pract. (6th Am. ed.) 1504, 1505. *MacCabe* v. *Hussey*, 5 Bligh (N. S.) 715, 729. *Wilson* v. *Hoss*, 131 U. S. Appendix ccx. *Ruckman* v. *Cory*, 129 U. S. 387, 390. *Giles* v. *Hodge*, 74 Wis. 360, 365. *Kleimann* v. *Gieselmann*, 114 Mo. 437, 443. *Sawyer* v. *Campbell*, 130 Ill. 186, 204. As bills of exceptions do not lie under the workmen's compensation act and the only way to bring questions of law to this court is by appeal, it follows that the general equity rule as to consideration of questions of evidence raised at a hearing before the chancellor ought to be followed. Such questions seasonably presented upon the record will be considered, but a decree will not be reversed for error in this respect unless the substantial rights of the parties appear to have been affected.

The question of evidence is this: A witness was permitted to testify to the declaration of the deceased employee made just before his injury in substance that he intended to feed and water his horse. The insurer objected that this declaration was

incompetent under R. L. c. 175, § 66. That section provides that "a declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." The argument is that this section renders such evidence competent only at a trial before a "court" and that neither the commission on arbitration nor the Industrial Accident Board is a "court." Plainly neither is a court in the strict meaning of the word. See *Opinion of the Justices,* 209 Mass. 607, 612. The members are not "judicial officers" within the meaning of c. 3, art. 1 of the Constitution. But they are given authority to summon witnesses, administer oaths, hold hearings, take testimony, examine evidence, make rulings of law and findings of fact, and render decisions. See Part III of the act. Their decisions may be enforced by appropriate proceedings in courts. The power to take testimony and make rulings of law which are subject to review by the judicial department of the government goes far to indicate that in performing those functions they are to be guided and controlled by the same general principles which would govern judicial officers in discharging the same duties. The workmen's compensation act in its practical operation affects large numbers of people. Its declared purpose is the humane one of preventing industrial accidents and providing payments for employees injured in the course of employment. It is substitutional in character for the common law remedy for a class of injuries formerly adjusted by actions at law. The word "court" has been used in statutes with a broader significance than including simply judicial officers. See *Aldrich* v. *Aldrich,* 8 Met. 102, 106. It may be given a signification liberal enough to include the committee on arbitration and Industrial Accident Board as constituted by the act, and under all the circumstances should be given such construction.

It is further contended that that section of the statute is inapplicable because a proceeding under the workmen's compensation act is not an "action" and hence the declaration of the deceased cannot have been made "before the commencement of the action." Here again the definition urged is too narrow. "Action" is here used in its comprehensive sense as meaning the pursuit of a right in a tribunal of justice without regard to the form

of procedure. *Boston* v. *Turner*, 201 Mass. 190, 196. A proceeding under the act contemplates ultimate enforcement in a judicial court and a declaration made before the institution of proceedings under the act is made before the commencement of the action. The language in *Dickinson* v. *Boston*, 188 Mass. 595, at 597, which seems to imply a restricted meaning and which is relied on by the insurer, was used in a different connection and with reference to the facts then before the court.

These considerations lead to the conclusion that R. L. c. 175, § 66, applies to hearings under the workmen's compensation act. Hence there was no error in receiving evidence as to declarations of the deceased employee. As there is no provision under the act for exceptions, the order must be

*Exceptions dismissed; decree affirmed.*

The case was submitted on briefs.

*W. H. Brooks & W. Hamilton,* for the insurer.

*G. F. Leary, T. C. Malley & G. D. Cummings,* for the administratrix of the estate of Joseph Pigeon.