GEORGE FERNALD'S (dependent's) CASE.

Suffolk. November 29, 1921. — March 3, 1922.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Workmen's Compensation Act,* To what injuries act applies; Procedure: appeal, waiver. *Evidence,* Presumptions and burden of proof.

Upon the evidence appearing in the record of the hearing of a claim under the workmen's compensation act by the dependent of one who, while engaged in employment as a night watchman with the duty of sweeping his employer's sidewalk, received a wound from the discharge of his own revolver, it was *held,* that

(1) There was a presumption against an intention on the part of the employee to commit the crime of suicide;

(2) A finding that such presumption was not overcome was warranted;

(3) The evidence was not so meagre, inconclusive and conjectural as to preclude the further finding that the employee accidentally shot himself;

(4) It could be found inferentially that the revolver, which was in the employee's hip pocket, interfered with and hampered his work of sweeping the sidewalk because freedom of movement was retarded, and that, while he was transferring the revolver from his hip pocket to the inside pocket of his coat, it was accidentally discharged;

(5) A finding that the death resulted from an injury received by the employee arising out of and in the course of his employment was warranted.

The credence and weight to be given to testimony of a witness before the Industrial Accident Board are not reviewable on an appeal from a decree of the Superior Court entered in accordance with a decision of the board upon the evidence.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board upon the claim of the widow of George Fernald, who was alleged to have died as the result of a bullet wound received in the course of his employment by Mitchell and Company, Incorporated. The board affirmed and adopted findings and rulings of a single member of the board, who heard the evidence, decided that the injury which resulted in the death of the employee arose out of and in the course of his employment, and awarded compensation to the claimant.

In the Superior Court the claim was heard by *Keating,* J. Material evidence is described in the opinion. The insurer moved

that the case be recommitted to the board for hearing of newly discovered evidence. The motion was denied; and the insurer appealed. By order of the judge, a decree then was entered in accordance with the decision of the Industrial Accident Board; and the insurer appealed.

The case was submitted on briefs.

*G. Gleason,* for the insurer.

*E. R. Hale,* for the claimant.

BRALEY, J. The insurer's appeal from the denial of its motion to recommit the case to the Industrial Accident Board on the ground of newly discovered evidence not having been referred to in the brief nor argued at the bar must be treated as waived.

It was uncontroverted that the employee was hired as a "night watchman and he did the sweeping as well." And that in the performance of his regular duties shovelling snow off the sidewalk in front of the store, he received a bullet wound in the abdomen from which in the opinion of the assistant medical examiner death by internal hemorrhage ensued the same day. The use by him of the word "accidentally" which the insurer asked "be stricken from the record," although the request should have been granted, did not in our opinion affect the substantial rights of the insurer. When the entire record is reviewed it furnishes no ground for reversal of the decree. *Pigeon's Case,* 216 Mass. 51, 55.

If the injury however could be found to have been received in the course of his employment, the insurer contends there was no evidence which warranted a finding, that it arose out of his employment. The only witness of what actually occurred said in substance, that there had been quite a fall of snow and while on his way to his place of business on the same side of the street as the employer's store he saw a man about twenty or thirty feet away shovelling snow off the sidewalk of which about three or four square yards had been cleaned. The man was stooping over shovelling when the witness "saw him straighten up and reach back and take something out of his right hip pocket." A minute or two after he had straightened up and removed it the witness heard the explosion. The man looked up and down the street, and "in his side pocket in a hurried fashion," shovelled a little and then fell to the ground. The witness also looked " to see if anybody

was near." It further appeared in his evidence that he saw the
employee "reach back and reach around," and "make a move-
ment toward his right hip pocket" and "take something out of
his hip pocket. . . . It looked as though he were going to put it
in there (indicating left inside pocket) and then he put his hand
down at his side. . . . As near as he could locate it, the sound,
the explosion came from the man who had been shovelling." The
witness also testified that after the report he kept on up the street
toward his own store, and when quite a distance "from the place
where the shot occurred," he saw "three men . . . walking down"
the street and as they "got about opposite the man who was shot
. . . crossed the street over to him." The man who was shot
"did not fall to the ground until just before these men crossed
over." The evidence showed and it could be found that the em-
ployer required the employee to carry, and furnished him with
a revolver "to protect the money and goods inside of the build-
ing," and "himself possibly too." And the employee had a license
to carry firearms which had not expired at the date of the injury.
See G. L. c. 140, § 131. The head of the firm's drapery depart-
ment called by the insurer stated "that when any watchman had
a revolver of his own, they carried it. If not, the firm gave them
one." The employee "did not carry the firm's revolver very long
. . . he came to witness . . . showed him a revolver which he
said belonged to him," and upon the witness saying "that, as long
as he had one of his own, there was no need of his carrying the
firm's . . . he gave the latter back to witness." The evidence of
the city marshal, introduced by the insurer, warranted a finding
that the revolver produced at the hearing was on the morning of
March 20 "taken from George Fernald," from which "three
shells had been fired and two shells were undischarged." It is
certain that a wound from a bullet caused the employee's death,
but the associate medical examiner did not probe the direction of
the wound or make an autopsy. It was his opinion that unless
a post mortem was performed there was nothing about the wound
from which he could ". . . determine the angle or position in
which the gun was held at the moment of discharge" or the dis-
tance of the body from "the muzzle of the pistol . . . when the
shot was fired."

The finding that the employee was not feloniously or accident-

ally shot by an outsider was justified on the evidence. But two inquiries of fact remain. Did he commit suicide, or did he accidentally shoot himself? It is to be presumed that the employee did not intend to commit a felony by taking his own life. *Commonwealth* v. *Mink*, 123 Mass. 422. *Sponatski's Case*, 220 Mass. 526. *Von Ette's Case*, 223 Mass. 56. Without reciting the evidence as to the employee's temperament and religious habits or financial difficulties, we cannot say as matter of law that a finding that this presumption had not been overcome was unwarranted. *Barron* v. *International Trust Co.* 184 Mass. 440. *Von Ette's Case*, 223 Mass. 56. *Sponatski's Case*, 220 Mass. 526.

But even if these findings were warranted the insurer urges that the evidence is so meagre, inconclusive and conjectural as to preclude the further finding of the single member that he accidentally shot himself, which the Industrial Accident Board adopted on review, and awarded compensation to the claimant the employee's widow. It was said in *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276, 281, an action for death by wrongful act of the defendant, and where there was no eyewitness at the time of death, that it was not necessary that any positive act of the intestate showing due care should be proved. "It may be inferred from mere absence of fault, when sufficient circumstances are shown fairly to exclude the idea of negligence on his part." A jury "must often reason according to probabilities, drawing an inference that the main fact in issue existed, from collateral facts not directly proving, but strongly tending to prove its existence." *Wright* v. *Tatham*, 5 Cl. & F. 670, 764. It could be inferentially found on the circumstances considered in the light of the direct evidence, that the revolver in his hip pocket interfered with, and hampered the performance of his work, because freedom of movement was retarded. And that while transferring the revolver from his hip pocket to the inside pocket of his coat it was accidentally discharged. The motions of the employee described in the evidence quoted are not inconsistent with this view. *Uzzio's Case*, 228 Mass. 331. *Sanderson's Case*, 224 Mass. 558, is plainly distinguishable.

We have not overlooked the evidence of the city marshal who qualified as an expert "in fire-arms," that the revolver if held in the pocket and removed from it could not be discharged unless it was cocked by somebody and then fired. But the credibility of

the witness and the weight to be given to his evidence are not reviewable as matter of law. *Pigeon's Case,* 216 Mass. 51. *Diaz's Case,* 217 Mass. 36. *Savage's Case,* 222 Mass. 205. It follows that the decree should be affirmed.

*Ordered accordingly.*