MENASHA WOODENWARE COMPANY, Appellant, vs. INDUS-
TRIAL COMMISSION OF WISCONSIN and another, Re-
spondents.

*April 7—May 12, 1925.*

*Workmen's compensation: Presumption against suicide: Burden of
proof: Evidence: Sufficiency.*

1. Findings of fact of the industrial commission within its juris-
   diction are conclusive in the absence of fraud.  p. 22.
2. In a proceeding under the workmen's compensation act by a
   wife to recover compensation for the death of her husband,
   the presumption is against suicide; and the burden of proof is
   on the party who alleges suicide to establish that fact.  p. 22.
3. Where the deceased employee came to his death either by
   drowning or by being scalded in a pit of hot water, and under
   the evidence the inferences as to accidental death are equally
   as strong as the inferences of suicide, the finding of the in-
   dustrial commission in favor of accident is sustained.  p. 24.
[4. Whether the court has power to grant a new trial under the
   workmen's compensation act, not decided.]  p. 25.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

This was an action to review the award of the *Industrial
Commission* granting compensation to *Mathilda Kuhr* on
account of the death of her husband in the course of his
employment for the plaintiff corporation.

The award of the *Industrial Commission* was affirmed by
the circuit court, and the plaintiff appeals.

For the appellant there was a brief by *Thompson &
Gruenewald* of Oshkosh, and oral argument by *John C.
Thompson.*

For the respondent *Industrial Commission* there was a
brief by the *Attorney General, Mortimer Levitan,* assistant
attorney general, and *Suel O. Arnold,* law examiner, and
oral argument by *Mr. Arnold.*

CROWNHART, J.   There is only one serious question to be
considered in this case.   The husband of the respondent

*Mathilda Kuhr* was employed as head fireman by the appellant corporation, and during the course of his employment he got into a pit of hot water in a portion of plaintiff's pump house and was either drowned or scalded to death. The question to be determined is whether or not the deceased came to his death as the result of suicide or as the result of accident. The *Industrial Commission* found in favor of accident, and the findings of fact of the *Industrial Commission,* within its jurisdiction, in the absence of fraud, are conclusive.

No one saw the tragedy. The ultimate finding of fact of death turns wholly upon circumstantial evidence.

In the recent case of *Fehrer v. Midland Cas. Co.* 179 Wis. 431, 434, 190 N. W. 910, this court said:

"The law is well settled, based on human experience, that there is a strong presumption against suicide. The love of life and the immorality of taking one's own life turn the mind against suicide. So it is that when suicide is alleged in defense the burden is on the defendant to establish such fact. In such a case, where the evidence is wholly circumstantial, as in this case, every other reasonable hypothesis to account for the death must be excluded to take the case from the jury." Citing a number of cases.

The same presumption is indulged in under the workmen's compensation law as in an action on an insurance policy. *Milwaukee Western F. Co. v. Industrial Comm.* 159 Wis. 635, 150 N. W. 998; *Bekkedal L. Co. v. Industrial Comm.* 168 Wis. 230, 169 N. W. 561.

The main facts in this case may be briefly stated. The deceased Kuhr had been employed by the plaintiff some thirty years and as head fireman eighteen or twenty years. On June 19, 1921, he came to his place of employment earlier than usual, at about 6:20 a. m. His time of beginning work was 7 o'clock. At 6:45 a. m. he and some other workmen were in the pump house changing their clothes and putting away their lunch pails preparatory to going to work. At the southeast corner of the pump house was a

door leading to the outside and opening inward.  In front of the door, and slightly south, was a steel cover set into the cement floor so that it was on a level with the floor.  This cover was two feet seven inches by two feet four inches. It was a quarter of an inch thick and weighed fifty-two pounds.  Under this cover was a pit, four feet nine inches deep from the top of the floor to the bottom.  It contained water to a depth of about three feet five inches.

Running through this pit was a boiler feed pipe running from the pumps to the boiler, and a cold-water pipe.  The deceased was last seen alive in the pump house at about 6:45 a. m.  He was found in the pit at about 8:30 a. m., dead.  He was partially standing in the pit, with his head down under the water.  The body was removed shortly thereafter, when the flesh was found to be cooked and the hair was loose on the head.  The temperature of the water was not taken, but it was hot enough to produce the results on the body stated.  The steel cover to the pit seemed to have been partially standing on edge leaning up against the wall, indicating, as one witness said, that it looked as though it had been stepped upon and tipped up.  There was no known reason for the deceased to have removed this cover, although the pipes running through the pit were a part of the machinery under his control, and if they needed attention it would be proper for him to examine them.  The deceased did not have on a coat but had on his overalls.  He was a man about six feet tall, and weighed 180 or 190 pounds.

On the part of the plaintiff there was testimony tending to show that the deceased had been worrying about some financial matters for some time prior to his death.  Also that he had been in ill health a few days prior thereto.  He had appeared despondent at times.  On the other hand, there was credible testimony that the deceased had appeared to other persons as cheerful as usual.  He had been sick only two or three days, and friends of his noticed nothing unusual in his appearance or in his disposition.  He was not

seriously embarrassed financially. He stood to lose $1,000 on some investment, but he still would have his home, worth some $4,000, clear, and some other property.

It is chiefly from these facts that the inferences as to the cause of death must be drawn. The steel plate could not slip on the floor as it fitted in the cement to a level with the floor. It could only be moved by somebody intentionally moving it. It is contended by the plaintiff that the facts stated point inevitably to suicide. It is often very difficult to determine whether death results from suicide or accident. Accidents are always unexpected and often very difficult to explain. In a suicide, while sane, we expect the person to use a certain degree of judgment and be impelled to his rash act by strong and cogent reasons. It is hard to contemplate a sane man entering into a pit of hot water and deliberately bending over and holding his head under the water in order to commit suicide. It is possible, of course, that one might take his life in this way. How this cover was removed from the pit is left only to conjecture. If some fellow workman out of curiosity partially removed it for some purpose, and left it open, he would probably be prone to forget it, or he would probably hesitate to explain it. If so partially removed and deceased stepped upon it, an accident would be readily inferred. If the deceased removed the cover, we might reasonably infer that he did it to perform some duty with reference to the pipes. On the whole, it would seem that the inferences of accident are equally as strong as the inferences of suicide. The *Commission* having found in favor of accident, the trial court having sustained the findings of the *Commission*, and the burden of proof being upon the plaintiff to overcome the presumption against suicide and to establish suicide, we come to the conclusion that the judgment cannot be disturbed.

A motion for a new trial was made, and denied by the court. This ruling is assigned as error. We have examined the supporting affidavits and grounds claimed for a new

trial, and conclude that the trial court was well within his discretion in denying the motion. As to the power of the court to grant a new trial under the compensation law we deem it unnecessary to decide.

*By the Court.*—The judgment of the circuit court is affirmed.