## Czuczko et al. *v.* Golden-Gary Company, Incorporated.

[No. 14,266. Filed August 11, 1931. Rehearing denied December 16, 1931. Transfer denied February 3, 1932.]

*Louis H. George* and *John H. Underwood,* for appel-. lants.

*William J. Whinery,* for appellee.

WOOD, J.—Appellant Rosy Czuczko, the surviving widow, and her five co-appellants, surviving children of one Mike Czuczko, deceased, filed their application upon the usual form with the Industrial Board of Indiana,

against the appellee, for compensation on account of the death of said decedent, as a proximate result of injuries received by him by reason of an accident arising out of and in the course of his employment by the appellee.

To this application, the defendant filed six separate paragraphs of answer. The first was a general denial. The second alleged that the decedent was not in the employ of the appellee at the time of the alleged injuries; that his injury and death were due to willful misconduct, in that he was at the time of the injury seeking to surreptitiously and unlawfully, without the knowledge or consent of the appellee, enter its premises for unlawful and improper purposes, and not for any purpose relating to decedent's employment. The third, in addition to the allegations contained in the second paragraph, alleged further that the injury resulting in death was the result of willful misconduct and violation of positive instructions given by appellee to said decedent. The fourth alleged that the injury and death of decedent was due to the willful and intentional attempt, without the knowledge or consent of appellee, to enter upon its premises, for the purpose of committing robbery or for some other unlawful purpose. The fifth alleged that decedent's injury and death was due to his willful failure and refusal to use a safety appliance specially provided by appellee, to wit, a certain key for opening the elevator shaft and elevator on appellee's premises. The sixth alleged that decedent's injury and death was the result of his willful misconduct, in that he, in a surreptitious and unlawful manner, entered the premises of appellee and the elevator shaft located thereon, by prying open the door thereto with an instrument known as a "screw driver," in positive and direct violation of explicit instructions which had been given to him by appellee.

This application was submitted to a single member of the Industrial Board for partial hearing January 9,

1930; the hearing was again resumed and completed upon July 8, 1930, before a single member of the Industrial Board. Upon July 21, 1930, an order was made awarding compensation to the appellants Rosy Czuczko, Anna Czuczko, Helen Czuczko and Mike Czuczko. Appellee appealed from this award to the full Industrial Board, where, on a hearing, an order was made denying an award of compensation. From this award, appellants have appealed, assigning as error that the award of the full board is contrary to law.

An examination of the record shows the material facts to be substantially as follows: The appellee is the operator of "Hotel Gary" located in the city of Gary; on September 1, 1927, Mike Czuczko, the decedent, commenced work for appellee as the operator of the service elevator in said hotel; he worked on September 1 and 2, returning to his home on the afternoon of that day about 5:30 o'clock; he was on duty from 6 o'clock in the morning until 4 o'clock in the afternoon of each day. On the morning of September 3, he left his home about 6 o'clock to go to his work; this was the last time he was seen alive by appellants; he spent the night of September 2 at home; it was his duty, when reporting for work each morning, to enter the office of the timekeeper, call his name, and punch his card in the time clock. Decedent's body was found in the bottom of the pit of the shaft of the elevator, which he was employed to operate upon September 7, 1927.

There is no evidence in the record explaining how or in what manner decedent's body came to be in the pit. When he left his work in the afternoon at 4 o'clock, another man came to operate the elevator and remained on duty until 1 or 2 o'clock in the morning. There is no evidence in the record where the car of the elevator was left by this operator. When the elevator operator came at 6 o'clock in the morning, he first got his break-

fast in the kitchen of the hotel, then he entered the elevator door and carried the ice down to the basement and stored it. "He attended to the bell indicator, what floor was rung and what floor for service, but his biggest duty was to carry merchandise from the ground floor down to the basement in the store room. That was the large part of his duty." The managing chef was a little late in arriving at the hotel on this particular morning; he did not know whether decedent got his breakfast on that morning, he did not see him. There was only one man he knew who saw decedent there that morning.

There was a small key, something like a screw driver in shape, which was used for the purpose of opening the doors of the elevator shaft from the outside on the first and eleventh floors of the building, found lying on the floor of the pit near the body of the decedent. Decedent's body was lying right up against the wall, the right side of his face was on the floor, the top of his head rubbed against the wall of the pit, blood had gushed from his mouth and nostrils; the body was in bad condition. There was one key provided for opening the doors to the elevator shaft from the outside, on the first and eleventh floors, which was kept in the main office of the hotel. In order to save time, the managing chef, who had general supervision over decedent, purchased a screw driver with which to open these doors and left it in charge of the storeroom man. This was the key found in the pit. When the decedent's absence was discovered, the ice had been taken to the basement and stored, the floor of the elevator was on a level with the ground floor, the lights were on, and the doors to the shaft were open. There was a door to the elevator shaft on each floor of the building, including the first and eleventh floors. If the operator of the elevator stopped the car anywhere near a door mark, he could open the door, step out of the

elevator and return again; the doors would not lock while the car was in that position, because the contact was broken. There was room for a man's body to pass down between the cage or car of the elevator and the wall of the shaft. The pit in which decedent's body was found was approximately seven feet square, constructed of reinforced concrete, and the bottom was 20 feet from the ground floor. Whether there were doors upon the cage of the car is in dispute.

It was stipulated between the parties that, if the man designated as superintendent of service, or storeroom man, as he is referred to at one place in the evidence, were present, he would testify that he had instructed all persons not to take the elevator until they came to see him, that he had the keys at his desk, that decedent did not obtain the keys to the shaft with which to operate the elevator from him, and that decedent did not report to him for work on the morning of September 3, 1927; that no one except the elevator operator had any right to move same after obtaining the keys; that appellant Rosy Czuczko told him on September 4, that she had been informed that her husband had been hurt; that if the man designated as timekeeper were present, he would testify that it was his duty to keep a record of all persons in the employ of the hotel; that decedent did not report for work the morning in question, and his name did not appear on the time book or pay roll, both of which were made up from the time clock for this day; that the timekeeper was 10 minutes late that morning, and, when he arrived, the elevator shaft was closed. That he did not see decedent on that day, and reported his absence to the managing chef at about 7:30 o'clock in the morning; that decedent had not been discharged nor had he notified any of his superiors of quitting the employment of appellee.

On September 3, at about 11 o'clock in the forenoon, appellant Rosy Czuczko was informed that her husband had been killed. Immediately, she went to the hotel to make inquiry about him and was informed that nothing had happened or could have happened to her husband. She returned there on several different occasions to make inquiry, always with the same result.

Examination of the entire record discloses that there was no evidence to sustain any one of the allegations contained in paragraphs two to six inclusive of appellee's answer, except, perhaps, by inference, the allegation contained in the second paragraph that decedent, at the time of his injury and death, was not in the employ of appellee. The burden was on the appellee to prove the allegation of its special paragraphs of answer. This it failed to do. The Industrial Board made no finding on the issues, and this is equivalent to a finding against appellee on those issues. *Raynes* v. *Staats-Raynes Co.* (1918), 68 Ind. App. 37, 119 N. E. 809; *S. J. Peabody Lumber Co.* v. *Miller* (1922), 77 Ind. App. 251, 133 N. E. 591; *Hufford* v. *Livingston* (1922), 79 Ind. App. 519, 137 N. E. 279; *American Chain Co.* v. *Salters* (1923), 80 Ind. App. 410, 140 N. E. 435; §8 Indiana Workmen's Compensation Act, Acts 1929 p. 536.

To the challenge of appellants that the finding of the Industrial Board is contrary to law, appellee interposes that well-settled rule of law that, where the evidence is conflicting, or where it is such that different deductions may reasonably be drawn therefrom, leading to different conclusions, and, upon this evidence the Industrial Board has made a finding, then such finding is conclusive upon this court, and will not be disturbed.

In weighing the evidence, however, and in arriving at the conclusion whether or not it is sufficient or insuf-

ficient to sustain an award for compensation, the Industrial Board should keep in mind and give effect to any rules of law or presumptions that may govern or prevail in the particular case under investigation.

The "Workmen's Compensation Act" was passed by our Legislature for the protection of employees engaged in industry, who, in many instances, were without any remedy for relief in case of accident resulting in injury, and is to be liberally construed, in order that its humane purposes may not be defeated. *Columbia School Supply Co.* v. *Lewis* (1916), 63 Ind. App. 386, 115 N. E. 103; *In re Duncan* (1920), 73 Ind. App. 270, 127 N. E. 289; *McDowell* v. *Duer* (1922), 78 Ind. App. 440, 133 N. E. 839, 841; *Calumet, etc., Machine Co.* v. *Mroz* (1922), 79 Ind. App. 305, 137 N. E. 627; *National Power, etc., Co.* v. *Rouleau* (1924), 81 Ind. App. 585, 144 N. E. 557; *Dowery* v. *State* (1925), 84 Ind. App. 37, 149 N. E. 922; *Fey* v. *Bobrink* (1926), 84 Ind. App. 559, 151 N. E. 705.

In determining whether the decedent was in the employ of appellee, and while thus engaged he had an accident, receiving injuries causing his death, thus entitling his dependents to compensation, it is necessary to give effect to certain presumptions of law which must be recognized as controlling in the instant case. Thus, the relation of master and servant existed between the decedent and appellee, and the law presumes that, having once been shown to exist, it continues until its non-existence has been established by satisfactory proof. *Norris* v. *New York, etc., R. Co.* (1927), 246 N. Y. 307, 158 N. E. 879; *Southern, etc., Co.* v. *Wellington* (1896), 36 S. W. Tex. Civ. App. 1114; *Pettee* v. *Noyes* (1916), 133 Minn. 109, 157 N. W. 995.

If an employee, charged with the performance of a certain duty, is found injured at a place where it would

be necessary for him to be in performing that duty, there is a presumption that he was injured as a result of and in the course of his employment. *Capital Paper Co.* v. *Conner* (1924), 81 Ind. App. 545, 144 N. E. 474; *Papinaw* v. *Grand Trunk R. Co.* (1915), 189 Mich. 441, 155 N. W. 545; *Wishcaless* v. *Hammond, etc., Co.* (1918), 201 Mich. 192, 166 N. W. 993; *Bekkedal Lumber Co.* v. *Industrial Comm.* (1918), 168 Wis. 230, 169 N. W. 561; *Menasha Woodenware Co.* v. *Industrial Comm.* (1925), 187 Wis. 21, 203 N. W. 906; *Saunders* v. *New England, etc., Co.* (1920), 95 Conn. 40, 110 Atl. 538; *Fernald's Case* (1922), 240 Mass. 567, 134 N. E. 347; *Flucker* v. *Carnegie Steel Co.* (1919), 263 Pa. St. 113, 106 Atl. 192; *Heileman Brewing Co.* v. *Shaw* (1915), 161 Wis. 443, 154 N. W. 631.

It is presumed that, when an employee is found dead at the place of his employment, he met his death while in the performance of his duties. It is also presumed that the death was not the result of suicide or murder. See authorities cited above.

It has been held by this court that compensation is not limited to those cases where the employee receives an injury while doing his work in the usual and customary manner or in the method directed; that, if such had been the intention of the Legislature, it would have indicated such fact by appropriate language. So, for this reason, this court was justified in refusing to give the act such a narrow construction, "and in holding that an employee, who in an honest attempt to discharge a duty assigned to him, does an act incidental thereto, not specifically directed, or departs from the usual method of performing his work, does not thereby necessarily deprive himself, or his dependents, of a right to compensation, if injured while so engaged." *Nordyke, etc., Co.* v. *Swift* (1919), 71 Ind. App. 176, 123 N. E. 449.

Considering the facts in this case in the light of the

above propositions of law, we must hold that the decedent was not guilty of the commission of any of the various acts charged against him in the several paragraphs of special answer, and we are justified in presuming that the decedent was not murdered, that he did not commit suicide, that, having been found dead in the pit of the shaft of the elevator which he was employed to operate, and on and about which it was necessary for him to be in the performance of his duties, he received the injuries causing his death as a result of, in the course of, and while performing his duties; that, having been in the employ of appellee, that relation continued unless the facts and circumstances were sufficiently strong to overcome this presumption.

When there is no eyewitness, the facts at issue may be proved by circumstantial evidence. This consists of the proof of certain facts and circumstances from which the court may infer other facts which usually and reasonably follow, according to the common experience of men. *Ohio, etc., Co.* v. *Industrial Board* (1917), 277 Ill. 96, 115 N. E. 149. When there are certain facts proved, the court not only may, but it is its duty to draw therefrom legitimate inferences that seem most reasonable. *Indiana Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N. E. 709.

While no one saw the accident in this case, that fact of itself is not fatal to an award of compensation, if the known facts, when weighed and considered according to the rules above announced, lead irresistibly to the conclusion that an award for compensation should be made.

Decedent when last seen alive by appellants was leaving his home for his work at the hotel; that he reached the hotel must be admitted, for, on September 7, four days after he left his home to go to work, his dead body

was found in the pit of the shaft of the very elevator which he was employed to operate; his head had scraped the side of the pit, and blood had gushed from his nose and nostrils; he was not in there as a result of any causes set out in appellee's special paragraphs of answer; there was no evidence to support them; the Industrial Board made no finding upon them, which is equivalent to a finding against appellee on those issues. Decedent was not murdered and placed in the bottom of the pit, nor did he commit suicide; there is no evidence to support either of these theories, and the presumption of law is against them. It was decedent's duty to operate the elevator in the shaft where the body was found. "There is a natural presumption that one charged with the performance of a duty, and found injured at the place where duty may have required him to be, is injured in the course of and as a consequence of the employment." There is no evidence to overcome this presumption. The decedent had been in the employ of appellee; he had not given notice that he was quitting appellee's employ, nor had appellee discharged him, so the law presumes that the relation of master and servant still continued. As a part of his contract of employment, decedent was to get his three meals each day; the managing chef was late in getting to the hotel that morning so he did not know whether decedent got his breakfast or not. The timekeeper was late in getting to his work that morning, so he could not tell, except for the fact that decedent's name did not appear upon the pay roll and time book of the hotel upon September 3, whether or not he had reported to punch the time clock before the timekeeper arrived, and, not finding him in, failed to do so. One person saw him at the hotel on the morning in question. It was one of the duties of decedent to take the ice from the first floor to the basement on the elevator and store it. When

the managing chef arrived, the ice had been taken to the basement. When the timekeeper arrived at the hotel, he found the elevator doors closed. When he missed the decedent at 7:30 o'clock in the morning, the ice had been taken to the basement and stored, the elevator car was standing at the first floor, the doors were propped open with an empty box, and the lights were on, the floor of the elevator car was wet; there was room for a man's body to pass between the side of the car and the elevator shaft.

Some person knew that decedent had met with an accident causing his death on the morning of September 3, for, at 11 o'clock in the forenoon of that day, appellant Rosy Czuczko was informed that her husband had been killed at the hotel. She went there immediately and made inquiry, as best she could, whereupon, she was informed that nothing had happened to her husband, and that it would be impossible for anything to happen to him. Thereafter, she made frequent trips to the hotel for the purpose of making inquiry concerning him, and each time met with assurance from the persons with whom she came in contact that nothing did or could happen to her husband in or about the elevator. Nevertheless, his dead body was found as heretofore stated. It is very apparent that appellee had notice that something serious had happened to the decedent upon the very day his absence was discovered.

Another man operated the elevator from 4 o'clock in the afternoon until 1 or 2 o'clock in the morning; where he left the car when he ceased operating it on this morning is not disclosed by the evidence. Another immutable but significant bit of evidence supporting the conclusion that decedent received the injuries causing his death while in the performance of his duties was the presence of the key or screw driver, which the managing chef had purchased for the use of decedent, in

opening the doors of the elevator shaft, on the floor of the pit near his dead body. A most reasonable inference to be drawn from this circumstance is that the decedent opened the elevator doors with the key and fell down the shaft. Whether the key was given to him by the superintendent of service, or whether it was obtained by decedent from the superintendent's office without his knowledge, is not clear. But if it was obtained by decedent without the knowledge or consent of the superintendent, this would not be such an infraction of appellee's instructions as would justify the Industrial Board in denying compensation to the dependents.

The finding against the appellee on its special paragraphs of answer, the presumptions that prevail, the facts and circumstances and the reasonable inferences to be derived therefrom, irresistibly lead to the conclusion that, on the morning of September 3, 1927, Mike Czuczko was in the employ of appellee; that he died as the proximate result of personal injuries received by reason of an accident arising out of and in the course of said employment; that the award of the full Industrial Board is contrary to law.

This cause, therefore, is reversed, with instructions to enter an award of compensation not inconsistent with this opinion.

### ON PETITION FOR REHEARING.

WOOD, P. J.—Appellee has filed a petition for a rehearing of this cause.

Much complaint is made and criticism directed against the statement contained in the original opinion, that: "There is no evidence in the record explaining how or in what manner decedent's body came to be in the pit." There is no direct evidence in the record explaining how or in what manner decedent's body came to be in the pit. But there is ample evidence in the record which,

taken in connection with the presumption of law which prevails in the instant case in favor of the appellants, and which counsel for appellee entirely overlooks in his brief on rehearing, to support the reasoning of the court in the original opinion.

We recognize and adhere to the often-repeated rule that this court will not weigh the evidence in an Industrial Board case, and is bound by its findings on questions of fact. But it is the duty of this court, upon the appeal of such cases, to examine and consider the evidence, for the purpose of determining whether or not there is any evidence to sustain the facts upon which the finding and order of the Industrial Board is founded.

We carefully and thoroughly examined every phase of the evidence in the record and are firmly convinced that the facts proved by the evidence, when taken and considered in connection with the presumptions of law prevailing in favor of appellants, lead inevitably and conclusively to but one conclusion, namely, that decedent was in the employ of appellee; that he died as the proximate result of personal injuries by reason of an accident arising out of and in the course of said employment, and that the award of the full Industrial Board is contrary to law.

The petition for rehearing is denied.