## MEYER *v.* KRAUSS LAUNDRY AND DRY CLEANERS.

[No. 15,097.   Filed March 20, 1934.]

*Elmer Q. Lockyear, Theodore Lockyear, Seth Ward,* and *T. Morton McDonald,* for appellant.

*Isidor Kahn, Robert C. Enlow,* and *Edward E. Meyer,* for appellee.

DUDINE, J.—This is an appeal from an award of the Industrial Board denying appellant compensation. The sole error assigned and relied upon is that the award is contrary to law.

The only question presented by appellant in this appeal is whether or not the finding is sustained by the evidence. The board found that:

". . . Sidney T. Meyer was in the employ of the defendant, Krauss Laundry and Dry Cleaners, on October 22, 1932, at an average weekly wage of $23.46. That plaintiff ceased work on the evening of October 24, 1932, and died as a result of a Streptococcus infection on November 1, 1932.

"The full board further finds that the decedent, Sidney T. Meyer, left as his sole and only dependent upon him at the time of his death, his widow, Lilly Meyer, age 24, a daughter, Virginia Meyer, age 6, and a son, Robert J. Meyer, age 3.

"The board further finds that said Streptococcus infection and the subsequent death of Sidney T. Meyer on November 1, 1932, did not grow out of any accidental injury sustained by him while in the course of his employment with said defendant, Krauss Laundry and Dry Cleaners."

In determining the question of the sufficiency of the evidence to sustain the finding we are not called upon to weigh the evidence, but if there is legally admissible evidence in the record which, if considered separate and apart from all other evidence, would sustain the finding made, we must affirm the award. Only the evidence favorable to the finding needs to be considered.

Appellant does not contend that the evidence was insufficient to sustain the finding of the facts contained in the first two paragraphs of the finding as set out herein, but contends that the evidence was insufficient to sustain the finding of the facts contained in the third

paragraph of the finding, as set forth herein, therefore we will discuss only the evidence pertaining to the facts found and set forth in said third paragraph of the finding.

The evidence shows that it was decedent's custom to keep the truck at his house and start on his route from his home. On Saturday, October 22, 1932, he left home with the truck to go on his route at an usual hour, apparently in good health, and uninjured. About noon of that day he returned to his home and called his wife's attention to what decedent called a "little scratch" on the middle finger of his right hand near the nail. He completed his work for that day. He returned to work the following Monday morning, but complained that his arm was hurting him so much that he could not drive his truck, and he asked for and was given a helper. That night a doctor attended him and found a small infection at the base of the nail on the right middle finger. A blister had formed there and the doctor opened the blister. During the next morning decedent's superior at appellee's laundry, and the assistant superintendent of sales, visited decedent at his home. They found him in bed, complaining of pain. They discussed decedent's laundry business with him so as to enable them to keep it going while he was unable to attend to it. Decedent did not at that time nor at any other time tell them nor any other person, authorized by appellee to receive reports of injury to its employees, how he hurt his finger, and no one made such a report to such person for decedent, before his death.

On Thursday, October 27, 1932, Mrs. Meyer called appellee company by telephone and obtained the names of their company doctors, and she called one of the company doctors. This doctor came that day. His testimony as to decedent's condition at that time, was

"—there was a small wound on the dorsal surface of the distal phalange of the middle finger of the right hand, indicating that this area might have been incised a few days previously. There was however very little drainage. The finger was somewhat swollen and tender, materially inflamed. He complained at this time of much more pain in the right Axillary region however, than his finger, but examination at this time did not reveal any severe Axillary adenitis (glandular infection) although there was some slight inflamation of these glands."

This doctor saw and treated decedent at that time and every day thereafter until and including November 1, 1932, when he died, and attended a post mortem examination in which they found much evidence of empyema in his lungs.

About three days previous to his death Mrs. Meyer applied a plaster to decedent's right axillary region, and it caused a severe burn; so severe that on October 30, 1932, there were numerous areas of erythema (inflamation) and several large vesicles (blisters) and decedent was quite tender there. The doctor found no chest pathology until late in the evening of October 31, 1932.

This doctor testified that in his opinion decedent's death was caused by empyema; that he did not know what caused the empyema, but he thought the injury on decedents finger, which the doctor treated on his first visit, *was not the cause* of the empyema; that he thought a pleurisy preceded the empyema because decedent's history of the case as given to the doctor on his first visit, showed that at the same time his finger began to hurt he also had much pain in the axillary region; that the pain in the axillary region, on the occasion of his first visit, was not due to axillary adenitis (glandular

infection), but he thought it was due to an already existing pleurisy.

He further testified that his opinion would not be changed if decedent had been in apparently good health at the time of the alleged injury, because decedent could apparently be in good health and still have the pleuritic condition.

On cross-examination the doctor testified that empyema could follow from tuberculosis, pneumonia, pleurisy or from any infection anywhere in the body.

A pathologist testified that he performed the autopsy in conjunction with the other doctor; that as a result of his findings in the autopsy he "would say Pleurisy or Empyema" caused decedent's death. The following questions and answers are taken from his testimony.

"Q. Would the fact that the pain existed at the same time in the right axillary region as the pain existed in the right finger, be indicative of the fact that the pain in the right axillary region was entirely disconnected with and not attributable to the finger?

"A. I would think that there would not be a connection. I would rather expect more symptoms to follow the injury or infection of the finger and that this would have produced some local pathological change in the immediate vicinity of the finger up the arm.

"Q. State if it is true that streptococcus infection is ordinarily spread gradually through the system.

"A. Ordinarily that type of infection will extend gradually and can be seen, provided it sets in the Lymph channels, but if the infection affects the blood stream there is a rapid destruction of bacteria.

\* \* \* \*

"Q. Would pain in the right axillary region be indicative of the condition of empyema which you found existed in Mr. Meyer, and which resulted in his death?

"A. Such condition is always accompanied by pain.

"Q. Right axillary region?

"A. I am not saying right axillary region exactly. It might be anywhere in the Plural cavity.

"Q. Would pain ordinarily be somewhere close to the region affected by the empyema?

"A. Ordinarily."

The qualifications of said doctor and pathologist were admitted by appellant.

Assuming, but not deciding, that the evidence conclusively shows that the alleged injury to decedent's finger was accidental and arose out of and in the course of his employment by appellee, we must affirm the award of the Industrial Board because the evidence of said doctor and pathologist is sufficient to sustain the finding of fact that the death of decedent "did not grow out of any accidental injury sustained by him while in the course of his employment with" appellee. (Quoting from finding.)

Appellant cites only one Indiana case in which the Industrial Board denied compensation, and this court on appeal on a question of the sufficiency of the evidence to sustain the award, reversed the award, and ordered the Industrial Board to grant an award of compensation, and that is the case of *Czuczko* v. *Golden Gary Co.* (1931), 94 Ind. App. 47, 177 N. E. 466. The basic reason for this court's decision in said case is clearly stated in the court's statement on rehearing thereof. *Czuczko* v. *Golden Gary Co., supra.* We quote from said statement as follows:

"We carefully and thoroughly examined every phase of the evidence in the record and are firmly convinced that the facts proven by the evidence, when taken and considered in connection with the presumptions of law prevailing in favor of appellants, lead inevitably and conclusively to but one conclusion, namely, that decedent was in the employ of appellee; that he died as the proximate

result of personal injuries by reason of an accident arising out of and in the course of said employment; . . ."

That decision is not determinative of this case, because the facts are different in legal effect. We deem it sufficient to note but one vital difference. In that case there was no evidence in the record which would sustain a finding that the direct cause of Czuczko's death was anything except a fall into the elevator pit. In the instant case the evidence of the doctor and pathologist certainly is sufficient to sustain the board's finding that decedent's death did not grow out of the alleged injury to his finger.

Appellee has called our attention to the failure of appellant to comply with the rules of this court in the preparation of her brief, and appellee forcefully contends the judgment should be affirmed because of such failure. There is much merit in appellee's said contention, but we prefer to decide the case on its merits, and since we are affirming the award on its merits, we deem it unnecessary to discuss the defects of appellant's brief.

Judgment affirmed.