LIVERS ET AL. *v.* GRAHAM GLASS COMPANY ET AL.

[No. 14,258. Filed August 13, 1931. Rehearing denied December 17, 1932.]

*James H. Meyer,* for appellants.

*Isidor Kahn, Robert C. Enlow,* and *Edward E. Meyer,* for appellees.

CURTIS, J.—This is an appeal from the action of the full Industrial Board denying appellants' application for an award of compensation for the death of James T. Livers (husband and father of appellants), which death was alleged to have been caused by reason of an accident arising out of and in the course of his employment by the Graham Glass Company (appellee herein). To the application of appellants, appellee filed an answer in two paragraphs. The first paragraph was a general denial, while the second paragraph pleaded the special defenses of intoxication and the commission of a misdemeanor.

The evidence is practically undisputed and is in substance as follows: James T. Livers, deceased, was, on and before February 18, 1928, employed as general superintendent of a glass factory owned by the Graham Glass Company. The factory was operated twenty-four hours each day and deceased was subject to call at any time, day or night. It was his custom to call at the factory shortly after 6 o'clock P. M. each day for the purpose of "checking up" on the day's work. Appellee company owned a Dodge automobile which was used

by deceased for transportation purposes, and in the carrying on of his duties under his employment. He was privileged to use it at his own discretion. The automobile, when not in use, was kept in a garage at appellee's factory. On February 18, 1928, when he left his home at about 12:45 o'clock P. M. he told his wife he was going to the factory. (It is not shown whether he went to the factory at that time or not.) The evidence further shows that deceased, on the afternoon of February 18, 1928, was at a "place where they sold drinks"; that he remained at such place until about 6 o'clock P. M. that afternoon; that while there, James T. Livers had seven or eight drinks of beer and possibly some other liquor; that he left the place at about 6 o'clock P. M. and told witnesses he was going back to the plant. The deceased left the drinking place in the Dodge sedan owned by appellee company and before he reached the factory, his automobile, the Dodge, collided with a street car and deceased was killed. This accident occurred shortly after 6 o'clock P. M., February 18, 1928.

Upon this evidence, the full board found "that the death of plaintiff's decedent, James T. Livers, was not the proximate result of a personal injury arising out of and in the course of his employment by the defendant, as alleged in plaintiffs' application, but was due to other causes and the finding herein should be for the defendants." An order denying compensation was accordingly entered upon this finding.

Appellants argue that the Industrial Board failed to find in favor of appellee with reference to appellee's defenses of intoxication and the commission of a misdemeanor, as pleaded in their second paragraph of answer, and that a failure to find on these issues was equivalent to a finding against the appellee on this issue. But appellee contends that the clause in the finding "but was due to other causes" must

be construed as a finding that his death was due to the other causes as set out in appellee's special answer.

We cannot agree with appellee's contention. An employee's intoxication and his commission of a misdemeanor are by statute (Acts 1915, p. 392, §8, Burns 1926, §9543, which was supplanted by Acts 1929, ch. 172, p. 536, §8), made special defenses and must be specially pleaded. In such a case, a failure to make a finding specifically on such defenses is equivalent to a finding against the pleador on that issue, upon whom rests the burden of proof. See *Raynes* v. *Staats-Raynes Co.* (1917), 68 Ind. App. 37, 119 N. E. 809; *S. J. Peabody Lumber Co. et al.* v. *Miller et al.* (1922), 77 Ind. App. 251, 133 N. E. 591; *Chicago, etc., R. Co.* v. *Kaufman* (1921), 78 Ind. App. 474, 133 N. E. 399; *Hufford* v. *Livingston* (1922), 79 Ind. App. 519, 137 N. E. 279; *American Chain Co.* v. *Salters* (1923), 80 Ind. App. 410, 140 N. E. 435.

Appellants further argue that the order of the full board is contrary to law for the reason that the evidence is uncontradicted that appellants' decedent was killed while performing a duty reasonably connected with the discharge of his duties as general superintendent of appellee company and that such accident arose out of and in the course of his employment.

The evidence is without conflict that the deceased was employed as general superintendent of appellee's glass factory; that his hours of employment were unlimited and that he was subject to call at any hour, day or night; that appellee company owned a Dodge automobile which was used by deceased when he saw fit to do so; that the factory was operating twenty-four hours per day; that it was decedent's custom to return to the factory shortly after 6 o'clock P. M. to "check up"; that he was driving the Dodge automobile owned by appellee when the accident occurred; that it was near 6 o'clock when the acci-

dent occurred; that one of his friends was following him for the purpose of taking him home from the factory and that, shortly before the accident, he had said that he was going to the factory.

It appears that it was purely discretionary with the decedent as to whether he should return to the factory at 6 o'clock or not. Hence it appears that whether the employment of deceased demanded his presence at the factory at the time he was injured was, to a large extent, subject to his own determination, and that whether he came to such a determination is an important question. The evidence as set out, *supra,* shows that decedent had come to such a determination before the accident occurred. The decedent was rendering services in the direct line of his duty to his employer, appellee, at the time the accident occurred, and it makes it none the less a duty even though it arose out of a required exercise of discretion by the employee, the decedent, himself. See *Union Oil Co.* v. *Industrial Accident Comm.* (1931), 211 Cal. 398, 295 Pac. 513; *Kelling* v. *Froemming Bros.* (1926), 287 Pa. 471, 135 Atl. 129.

It has been held a number of times by this court that in cases of this character there are five facts which must be found as a legal basis for an award of compensation. The essential facts are: (1) That claimant was an employee; (2) that he received an injury by accident; (3) that the accident arose out of and in the course of the employment; (4) the character and extent of such injury; and (5) claimant's average weekly wage. See *Muncie Foundry and Machine Company* v. *Thompson* (1919), 70 Ind. App. 157, 161, 123 N. E. 196; *Malton et al.* v. *Malton et al.* (1931), 92 Ind. App. 350, 175 N. E. 369.

In the instant case, the Industrial Board's finding of facts fails to include the five essential facts upon which an award could be based. In view of the particular facts

of the case at bar, it appears to us that the ends of justice will more nearly be met in the instant case by directing a rehearing before the board. The award of the Industrial Board is reversed, with directions to the board to vacate and set aside the order made by the full board and for further proper proceedings not inconsistent with this opinion.

Kime, J., not participating.

### DISSENTING OPINION.

LOCKYEAR, J.—Dissenting. The appellants, Ola Livers, wife, and Geneva Livers, John Livers, James Livers, Jr., and Charles Livers, children of James T. Livers, deceased, filed application before the Industrial Board for the adjustment of a claim for compensation against the Graham Glass Company and the Aetna Life Insurance Company alleging that James T. Livers died as a proximate result of a personal injury received by him on the 8th day of February, 1928, by reason of an accident arising out of and in the course of his employment, in that said James T. Livers was at said time employed by the said Graham Glass Company as superintendent of this company's factory at Evansville, Indiana; alleging further that the deceased while driving an automobile in an easterly direction on Walnut Street between what was then Bray and Huston avenues, was struck by a street car running in a western direction on Walnut Street, thereby wrecking the automobile and killing the deceased; that the average weekly earnings of the deceased at the time of his death was $112.50 per week.

To the application, the appellee, Graham Glass Company, filed an answer in two paragraphs, the first paragraph in general denial and the second paragraph pleaded a defense of intoxication and commission of a misdemeanor in that he was operating a motor vehicle upon a public highway in the state at a speed greater than 30

miles per hour, which under the circumstances, it is alleged was a violation of the law.

The evidence was heard before a single member of the board who made the following finding: "Said member having heard the evidence and being hereby fully advised in the premises find for the defendant, this the 23d day of January, 1929."

The appellant filed application for a review by the full Industrial Board on the grounds that said order is not sustained by sufficient evidence and is contrary to law, and the full Industrial Board having heard the argument of the appellants, and reviewed the evidence and being duly advised in the premises find that the death of the deceased, James T. Livers, was not the proximate result of personal injuries arising out of and in the course of his employment by the defendant as alleged in the plaintiff's application, but was due to other causes, and the finding herein should be for the defendant and it was considered and ordered by the full Industrial Board that the plaintiff take nothing by their application filed herein on January 3, 1930.

The Industrial Board having found that the death of the deceased, James T. Livers, was not the proximate cause of a personal injury arising out of and in the course of his employment by the defendant, it becomes the duty of this court upon appeal to examine the evidence, and if there is any legitimate evidence or legitimate inferences therefrom to support said finding, the award must be affirmed.

There is evidence introduced to the effect that the deceased was employed as general superintendent of the glass factory owned by the Graham Glass Company. This factory was operated 24 hours a day; that the deceased was subject to call at any time that his services might be needed at the factory. It was his custom to call at the factory shortly after 6 o'clock P. M. each day

for the purpose of checking up on its work. The glass company owned a Dodge automobile which was used by the deceased and other officials of the company for transportation, which he was privileged to use at his own discretion. The automobile when not in use was kept in a garage at the glass factory.

On Saturday, February 18, 1928, he was at home until about 12:45 P. M. when, as his wife testified, he told her that he was going to the factory. Objection to this testimony was sustained by the hearing member of the board.

Instead of going directly to the factory, he together with one Charles Yates, employee of the glass company in the position of shift foreman, rode in the Dodge sedan, and went to a place on Fourth Street in said city operated by a man by the name of Brown, to which place they went for the purpose of drinking intoxicating liquor. There they stayed all afternoon. Yates testified that Livers and he had about seven or eight drinks.

In answer to the question: "How many quarts of beer did he have that afternoon?" he stated: "Well, I do not know whether he drank four quarts of beer and three drinks of liquor or five quarts of beer and two drinks of liquor. I remember seven drinks we had."

He further testified that he never went away from the building until after 6 o'clock.

In answer to the question as to whether he was sober or drunk, the answer is: "I would say he was drunk."

"He told me that he was going to the factory, and he told me before that, he was going some place with his wife that night."

There was no objection to the question and answer that he was going to the glass factory.

He then drove out east on Walnut Street, which is in the direction of the glass factory, and ran into the front of an on-coming street car and was killed.

There is no finding by the board upon the question of whether Livers' death was caused by being intoxicated or that he met his death through the violation of any law.

We are then met with the question as to whether there is any legitimate evidence to show from which the Industrial Board could find that the accident did not arise out of and in the course of his employment.

Generally speaking and subject to exceptions in order to render such accidents compensable under the act, it must be shown:

(1) That the means of transportation were provided by the employer or the employee's time is included in the wages.

(2) That the way used was the sole means of ingress or egress to the plant of the employer or was constructed by him; or

(3) That while on his way to and from work the employee was charged with some duty to his employer. *Kent* v. *Virginia-Carolina Chem. Co.* (1925), 143 Va. 62, 129 S. E. 330.

As a general rule an injury suffered by an employee while going to and from work does not arise out of the employment. An injury sustained while riding to the place of employment in a conveyance furnished by the employer in compliance with one of the terms of the contract of employment for the use of the employees, but in which the workmen were not directed or required to ride does not arise out of the employment, where it appears that the injury was received before and not during the hours of the workmen's employment, when the employer had no control over him and before the beginning of the period covered by his wages. *Nesbitt* v. *Twin City Forge and Fdry. Co.* (1920), 177 N. W. 131.

To have all the requisites for compensation present,

it is necessary that the employee be in the place of employment discharging some of the duties which he is employed to perform. *Glaip* v. *City of Pomona*, 1 California I. A. C. D. (1914) 6, 7 N. C. C. A. 411.

The usual rule followed in workmen's compensation cases appears to be that a man's employment does not begin until he has reached the place where he is to work or the scene of his duty, and does not continue after he has left the premises of his employer. (Bradbury on Workman's Compensation, 3d ed. 468.) And it is ordinarily held that if an employee is injured on the premises of the employer in going to and from work he is entitled to compensation. Bradbury on Workmen's Compensation, 3d ed. 473, and authorities cited.

The employment is not limited to the exact moment when the workman reaches the place where he begins his work, or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances connected with the accident. Boyd on Workmen's Compensation, par. 486. Whether an employee is going to or from the place of his employment, in the line of his employment, will depend largely on the particular facts and circumstances of each case. There must necessarily be a line beyond which the liability of the employer cannot continue, and the question where the line is to be drawn has been held to be usually one of fact.

The following Indiana cases illustrate the principles enunciated by the text writers: *In re Raynes* (1917), 66 Ind. App. 321, 118 N. E. 387; *In re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142; *Moore* v. *Sefton Mfg. Co.* (1924), 82 Ind. App. 89, 144 N. E. 476; *Great Lakes Dredge and Dock Co.* v. *Totzke* (1919), 69 Ind. App. 303, 121 N. E. 675; *Indian Creek Coal Mining Co.* v. *Wehr* (1920), 74 Ind. App. 141, 127 N. E. 202; *In re*

*Bollman* (1920), 73 Ind. App. 46, 126 N. E. 639; *In re Betts* (1918), 66 Ind. App. 484, 118 N. E. 551; *Mercantile Comm. Bank* v. *Koch* (1925), 83 Ind. App. 707, 150 N. E. 25; *Opell* v. *Phillips* (1929), 90 Ind. App. 552, 169 N. E. 354; *Deckard* v. *Trustees Indiana University* (1931), 92 Ind. App. 192, 172 N. E. 547; *Wertz* v. *Reynolds* (1921), 77 Ind. App. 234, 133 N. E. 393.

Where an employee at his request was furnished a bicycle to ride to and from work and was killed when he collided with a motor car on his way home, it was held that the accident did not arise out of his employment even though the employee would not accept the employment unless provided with a bicycle. Schneider's Workmen's Compensation Law, Sec. 265.

Where a police judge was allowed to divide his time between his work and his private practice; in denying compensation for an injury sustained as a result of his being struck while on his way to his private office, it was held that the accident did not arise out of or in the course of his employment, although by the terms of his employment he was required to be ready to perform certain duties at any hour of the day or night, it does not follow that every accident and injury which he may receive during the 24 hours arises out of his employment.

It was held in a California case that compensation would not be awarded an employee who purely of his own purpose leaves his place of employment before his day's work is finished and several hours later is injured on the streets when returning to his place of work for the purpose of attending to some unfinished business. *Fidelity and Casualty Ins. Co.* v. *Industrial Accident Comm. of Cal.* (1920), 192 Pac. 166.

Schneider's Workmen's Compensation Law, 2d ed., p. 769. "As a general rule an injury suffered by an employee while going to or returning from work does not

arise out of the employment. An injury sustained while riding to the place of employment in a conveyance furnished by the employer in compliance with one of the terms of the contract of employment, for the use of the employees, but in which the workman was not directed or required to ride, does not arise out of the employment, where it appears that the injury was received before, and not during the hours of the workman's service, when his employer had no control over him and before the beginning of the period covered by his wages." *Nesbitt* v. *Twin City Forge & Fdrg. Co., surpra; Strohl* v. *Eastern Penn. Ry. Co.* (1921), 113 Atl. 62; see 153 Atl. 154.

In the case of *Langenheim* v. *Ind. Comm. of Ohio* (1927), 158 N. E. 605, where a workman on his way home from work was killed by a burglar, it was held that compensation should not be recovered. The court said: "The agency is extrinsic to the element of employment and the necessary nexus between the fatality and the employment does not in our judgment in law exist."

In the case of *McKenzie* v. *Ind. Comm. of Ohio* (1926), 155 N. E. 704, the plaintiff was in the employ of the defendant. He was to commence work on the particular morning of the injury at 7 o'clock. He went from his home on a street car to within three blocks of where he was to work, arriving there at about 6:30 A. M., and in alighting from the street car and while attempting to cross the street, he was struck by an automobile and injured. The accident did not arise out of or in the course of the employment.

*Dambold* v. *Industrial Comm. of Ill.* (1926), 154 N. E. 128, holds that the general rule followed in construing the Workmen's Compensation Act is that a man's employment does not begin until he reaches the place where he is to work or the scene of his duties, and does not

continue after he has left. Citing *Schweiss* v. *Ind. Comm.* (1920), 292 Ill. 90, 126 N. E. 566; *Houlehan* v. *Pullman Co.* (1924), 280 Pa. 402, 124 Atl. 640.

The cases cited that allow compensation have been so decided on the ground that the employer required a particular route to be traveled or the route traveled was the only one open to the employee.

The case of *Whitney* v. *Hazard Lead Works et al.* (1927) (Conn.), 136 Atl. 105, is so similar to the instant case and the reasoning of the court is so well defined that we quote at length therefrom. "The following facts were found by the commissioner. The respondent employer, Hazard Lead Works, is a corporation having a factory in Brooklyn, N. Y., and offices in Hazardville, Conn., where it employs about ten persons. The plaintiff claimant is treasurer and general manager of this corporation, having a weekly salary averaging $60. She maintained two offices, one in the company's offices in Hazardville and the other at her home. Her work was done at these two offices, at her convenience, and as was calculated to promote its efficiency; sometimes her stenographer came to her office at her home to assist her. The plaintiff was bound to no regular hours, nor was her work restricted to any particular locality. Her duties frequently took her to New York and other points outside the town of Enfield, where she resided. She observed no strict routine in the performance of her work, but generally planned to go to the Hazardville office about 8 'clock in the morning and start the work. She might remain a short time, or for the rest of the day. Sometimes she started the work in the morning and came back again in the afternoon. If she so elected, she might take time off, for personal or domestic duties, at any time during the day, or for a longer period. Her regular method of going from her home and office in her home to the offices at Hazardville was by means of

an automobile. This was known to the corporation which contributed $10 a month to the maintenance of the car. Perhaps once a year, in going from her home to these offices and in returning, the plaintiff might use the street cars. On the evening of February 14, 1922, she had been busily engaged in preparing certain important work for the corporation which she completed by rising early on February 15, 1922, and working an hour or an hour and a half in the morning in finishing it. Plaintiff, taking this material in a brief case, proceeded to 'Matheson corner' to take a trolley car to these offices, and while on the public highway at this corner she slipped and fell, suffering severe injuries. The plaintiff's reasons for departing from her usual custom on this day were, first, that the trolley happened to be due for Hazardville at the time her special work was completed and she was ready to start for Hazardville; second, there was a severe storm impending and her family deemed it unsafe for her to use her car; and, third, because she deemed this a safe and sure method of taking the material she had prepared to these offices. Nothing in the evidence showed that the street hazard to which the plaintiff was subjected on the morning of her injury was in excess of the hazard encountered by the ordinary wayfarer at the same time and place. . . . because the ordinary contract of employment of a workman to render service at a designated place does not cover his movements outside of that place. He uses the highways as the public uses them because he must, and not because his employer by the terms or implications of his contract of employment has the right to require him to use them at the employer's will. Citing *Lake* v. *Bridgeport* (1925), 102 Conn. 337, 343, 128 Atl. 782, 784.

"The same rule must govern the executive. We state in this case that this rule is subject to many exceptions,

'based on the terms of the contract of employment.' Four of these we note: (1) Where the employment requires the employee to travel on the highways. (2) Where the employer contracts to and does furnish transportation to and from work. (3) Where the employee is subject to emergency calls, as in the case of a fireman. (4) Where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer, as in *Mason* v. *Alexandre* (1921), 96 Conn. 343, 113 Atl. 925, and *Corvi* v. *Stiles and Reynolds Brick Co.* (1925), 103 Conn. 449, 453, 130 Atl. 674.

"We are not dealing with the case of an employee passing from one part of the employer's plant to another. The office that was maintained by the plaintiff in her own home was maintained, so far as the finding discloses, for the convenience of the plaintiff. It was not established, controlled, or maintained by the defendant employer. It cannot be said that the plaintiff was in the employ of her employer during the evening when she worked at her home, nor during the hour and a half she worked in her office in the early morning, preceding her injury. The plaintiff might at any time while in her home have turned from the work she was engaged upon for her employer to engage in domestic work for herself or her household; it could not be reasonably held that she was in the employment of the defendant employer during such period of time as she was engaged in her own personal matters or in domestic work. Not having regular hours of office work while in her home, it would be impossible to apportion the part of the day spent in her home between her employment and her personal duties. The facts found do not bring the plaintiff within any known exception to the rule that the ordinary contract of employment of a workman or an executive of a business whose area of employment is within defined

limits cannot be regarded as in the course of their employment, 'while going to and returning from work upon the public highways.' Employees of any business, of any degree, who carry work from their place of business to their home, and there complete it, cannot be regarded as in the course of their employment during the period when they are engaged upon such work at their home in the absence of any agreement, express or implied, by the employer, that the employment shall continue during the period of such work. Nor can they be regarded as in the course of their employment when they are returning in the morning with the completed work to their place of employment any more than they could be so regarded when they were returning without work on other mornings. Nor could it be reasonably held that the employee was in the course of her employment while doing such work in her home in the absence of such agreement or understanding, although not in such employment while not doing such work in her home. There would be so great a degree of uncertainty and unreliability in determining whether the employee was at any given time engaged in the employer's work while at home as to make it wholly impracticable to make such a determination.

"The plaintiff's position was executive, her hours of duty depended upon her own will, and whether she remained in the employer's offices or in her home was also dependent upon her will. Her employment did not require her to travel upon the highway in any greater degree than that of the general public. She was not in the course of her employment when she was injured as a result of a fall upon a public highway. If the plaintiff was not in the course of her employment when injured, obviously the injury suffered could not have arisen out of it. The risk of a traveler falling upon a highway, who is not required, through his employment,

to travel thereon in any greater degree than that of the general public, cannot be said to be one 'involved in the employment, or incident to it, or to the conditions under which it is required to be performed.' The situation of the plaintiff was not like that of the policeman, the fireman, the letter carrier, the insurance agent, the solicitor or collector whose duties require them to travel upon the streets in the course of their employment. The cases therefore which hold that an injury, suffered by such persons in the course of their employment while traveling upon the public streets, arose out of the employment are not applicable upon the facts of this record. The plaintiff's employment did not require her to travel upon the public streets in any different way than the rest of the public."

In *State, ex rel. Gallet* v. *Clearwater Timber Co.* (1929) (Idaho), 274 Pac. 802, on page 805, quoting from an English case, we find the following: "I think two propositions are established by the authorities: (a) The employment of a workman does not begin until he has left a public road, and it does not end until he has reached a public road. While on the road he is exercising his right as a member of the public, and not any right arising out of his contract of employment."

Even in the case of an automobile salesman, who called at employer's salesroom each morning for a list of prospective customers and made sales anywhere in the city, and was free to take lunch anywhere he pleased, spent the forenoon about the salesroom because a sale was being had and was killed in a collision while returning to the salesroom from luncheon at home. The accident did not arise out of the employment. *Lipinski* v. *Sutton Sales Co.* (1922), 190 N. W. 705, Mich. case.

The court says: "An examination of the cases where the accident was upon the street and liability was sustained will disclose that in each case the employee was

*at the time* of the accident in the discharge of his duties to the employer and the accident arose out of the discharge of such duties."

Suppose Livers had met with the accident on his way from his home to the place where he obtained his liquor, could there be compensation allowed? Certainly not.

Was he at work for the company when he left that place while on the road to the company's factory? If so, what was the work? He may have been evolving plans for the company while on the way, but he was in no way executing any plan he may have had.

Admitting for the sake of argument that he was on his way to the factory; —admit that he was in his employer's car, which he himself used to go and come— yet he was not in the course of his employment and certainly the accident did not arise out of it.

Can there be any different rule for a superintendent than for a glass blower? Certainly not.

It is contended by appellants that this superintendent had no regular hours and he was subject to call at any time; even so, when he was off duty, he was not on duty.

When he was away from the plant what duties did he have? None. When he was on his way to the plant, he had no more protection than the lowest paid man in the factory. We cannot make fish of one and fowl of the other. The fact is, he was not called.

There may have been times when he was called, but not this time.

Suppose he had been going from the factory to the drinking place. Would he have been protected? Certainly not.

Having in mind the rules of law as to burden of proof and the sufficiency of the evidence to support a finding, as has been many times stated by this court, we find that there was sufficient evidence to support the finding

of the Industrial Board that the death of James T. Livers was not the proximate result of a personal injury arising out of and in the course of his employment.

For the reasons above stated, I am of the opinion that the order of the Industrial Board that the appellants take nothing should be affirmed, and I therefore dissent.