DUBBERT *v.* BEUCUS

[No. 14,905. Filed April 25, 1933.]

*Tinkham & Galvin,* for appellants.

*Gavit, Hall, Smith & Gavit,* for appellee.

Wood, J.—Appellants, as the surviving husband and daughter respectively, of Laura Lute Dubbert, filed an application with the Industrial Board for adjustment of compensation as alleged dependents, because of her death as the result of an accident arising out of and in the course of her employment by the appellee.

A hearing was had before a single member of the board, who awarded compensation. Upon a review before the full board, a majority thereof made an award denying compensation, from which the appellants have appealed to this court assigning as error, that the award made by the full Industrial Board is contrary to law.

On the hearing before the full Industrial Board, a majority made a finding of facts as follows:

"The full Industrial Board of Indiana having heard the argument of counsel and having reviewed the evidence and being thereby duly advised in the premises a majority of the members of the full Industrial Board find that on March 4th, 1932, one Laura Lute Dubbert was in the employ of the defendant at an average weekly wage of $15.00; that on said date the said employee received a personal

injury as the result of an accident which resulted in her death on March 4th, 1932.

"The said majority of the members of said board find that the death of the said Laura Lute Dubbert was not the result of an accident arising out of and in the course of her said employment by the defendant and the finding herein should be for the defendant on plaintiff's application."

Upon this finding of facts, a majority of the full board entered an award denying compensation.

It was stipulated by the parties that Laura Lute Dubbert died as the result of an accident on March 4, 1932; that on that date and prior thereto, she was in the employ of the appellee receiving a weekly wage of $15. It was not stipulated that the decedent's death arose out of and in the course of her employment, nor that appellants were dependents.

From the evidence, it appears that appellee owned and operated an auto paint shop in Hammond, Indiana. Mrs. Dubbert was employed by him in the capacity of bookkeeper. On the afternoon of March 4, 1932, she did not work, but with relatives made a trip to Kankakee, Illinoise, for the purpose of visiting a sister. Appellee had just moved his business to a new location. Mrs. Dubbert had been working on a mailing list in the forenoon of that day, and appellee gave her instructions to have it out that day. By mailing list he meant cards and letters. to notify his customers that he had moved to a new location. On her return home from Kankakee, Mrs. Dubbert, in company with Mrs. Mabel Gluth, a sister living in Hammond, drove past appellee's shop; this was at five or five ten in the afternoon. Mrs. Gluth testified that Mrs. Dubbert went into the shop; she remained in there five or ten minutes; when she returned to the automobile she had a package; from there they proceeded to the home of Mrs. Gluth where Mrs. Dubbert remained for supper. Mrs. Gluth saw Mrs. Dubbert open the package

which she got at appellee's shop when she stopped there; it contained cards. While the meal was being prepared Mrs. Dubbert was addressing these card for appellee. Mrs. Dubbert said that she had to get them in the mail; that appellee was re-opening that evening, and she had to have the cards in the mail for the next morning. After the meal Mrs. Dubbert said she wanted to go back to appellee's shop; that she had to see appellee about the cards; she wanted to know about addressing some of them; she did not understand about some he wanted addressed. Mrs. Gluth's husband, George C. Gluth, took Mrs. Dubbert back to appellee's shop in an automobile. They left the Gluth home about seven five o'clock in the evening; when she left the house Mrs. Dubbert had the cards which she had been addressing with her. George C. Gluth testified, that after the meal Mrs. Dubbert said that she wanted to return to the place where she was working, and he took her to appellee's shop in an automobile at her own request; she did not make any statement to him why she wanted to return to the shop; Mrs. Dubbert alighted from the automobile immediately in front of appellee's shop, but on the opposite side of the street; this was between seven five and seven fifteen o'clock in the evening. The next time the witness saw her she was in the hospital where she died, probably about an hour after she alighted from the automobile. He learned that Mrs. Dubbert had been hit by an automobile but did not see the accident happen. The appellant, Herman Dubbert, testified that he was the husband of Laura Lute Dubbert; that they were married April 5, 1916; were living together as husband and wife at the time of her death; that the appellant Laurette Dubbert was their daughter, and was fourteen years of age. He saw his wife at home at noon on March 4, 1932. He had a telephone conversation with her at six o'clock in the evening. He had another telephone conversation with

her at twenty minutes of seven o'clock in the evening, when she informed him that she was going back to work, and it was arranged that he should meet her there after work. When he arrived at appellee's shop he found his wife there, suffering from the injuries which caused her death. He found thirty or forty one-cent postal cards and some envelopes in Mrs. Dubbert's purse; she had addressed them. He mailed the postal cards on the morning of March 5, 1932.

Appellee testified that about eleven o'clock in the forenoon on March 4, 1932, Mrs. Dubbert asked him if she could get off that afternoon, he told her that she could have the afternoon off, but that he wanted the rest of the announcements mailed out that day, either in the afternoon or evening. The work she was doing on the announcements was the last of it and he wanted it finished during the day, either afternoon or evening; that was her work and he did not care when she did it. During the time of moving the shop Mrs. Dubbert did occasional work in the evening and came back to the office for that purpose during that period. He saw her at the shop about five o'clock in the afternoon on March 4, 1932; he did not talk to her at all; did not instruct her to return to work that night; did not make any arrangements to meet her at the shop that evening, and did not give her instructions that he would meet her any where else on business. He did not know whether, when she left the shop at five o'clock in the evening, she took any package of cards; he did not see and did not pay any attention; did not give her any instruction that she was to take any package of cards to her sister's or anywhere else and address them; did not give her any instruction, that after leaving the shop at five o'clock she was to return there with or without cards, to complete some work at his place of business. He did tell her she was to have the afternoon off, but that he was anxious to have the cards

that day. He did not know how the accident happened; heard a crash out in front of his place of business; went out and investigated; found Mrs. Dubbert lying in the street; carried her in; notified the police and her sisters.

Appellee offered and read in evidence two written statements signed by Herman Dubbert, dated April 13, and June 3, 1932, also a written statement signed by Mabel Gluth dated April 29, 1932. There was no substantial conflict in these statements, and the testimony given by the two witnesses as above set out.

The finding of facts made by the Industrial Board is binding upon this court and cannot be disturbed if supported by any competent evidence. The duty also devolves upon the Industrial Board to determine the ultimate facts, and if in determining these it reaches a legitimate conclusion upon the evidential facts, this conclusion cannot be disturbed by this court, even though it might prefer another conclusion which is equally proper and legitimate. *Lazarus* v. *Scherer* (1931), 92 Ind. App. 90, 174 N. E. 293, and authorities there cited. The Industrial Board may also draw such reasonable inferences from the facts as it feels have been established thereby. *Goshen Veneer Co.* v. *Cozzi* (1931), 93 Ind. App. 160, 176 N. E. 634.

This court has adopted the rule that injuries received by the workman in going to or returning from his place of work are not compensable under the Workmen's Compensation Act, unless there was some causal connection between the employment and the injury in the sense, that by reason of the employment there was some increased or additional exposure of the injured person to the kind or character of the hazard or danger which caused the injury. It must "have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *In re Betts* (1918), 66 Ind. App. 484, 118 N. E. 551, 552;

see also *Clark* v. *Voorhees* (1921), 231 N. Y. 14, 131 N. E. 553.

That is to say as applied to the instant case, there must have been something in the nature of Mrs. Dubbert's employment that subjected her to the hazards of travel upon the public streets of the city of Hammond. This the evidence fails to show.

Mrs. Dubbert, at her own request, was permitted to absent herself from her place of work during the afternoon for her own convenience and pleasure, conditioned on her getting the notices addressed and in the mail during the afternoon or evening of that day. There was no understanding or agreement between her and the appellee that she should take any of the work out of appellee's shop to the house of her sister to complete it. In fact, the appellee had no knowledge that she did so until after the accident. The appellee did not request Mrs. Dubbert to return to the shop that evening, and had no knowledge that she intended to return there. So far as the evidence shows she was acting wholly upon her own initiative and for her own convenience.

In the case of *Whitney* v. *Hazard Lead Works* (1926), 105 Conn. 512, 136 Atl. 105, 107, the appellant was employed by appellee in the capacity of treasurer and general manager. After reviewing the facts which were much more favorable to the claimant than those which we here have under consideration, the court, in the course of its opinion, in denying the appellant's right to compensation said: "The plaintiff's work did not require her to travel upon the highway. We are not dealing with the case of an employee passing from one part of the employer's plant to another. The office that was maintained by the plaintiff in her own home was maintained, so far as the finding discloses, for the convenience of the plaintiff. It was not established, controlled, or maintained by the defendant-employer. It cannot be said

that the plaintiff was in the employ of her employer during the evening when she worked at her home nor during the hour and a half she worked in her office in the early morning, preceding her injury. The plaintiff might at any time while in her home have turned from the work she was engaged upon for her employer to engage in domestic work for herself or her household; it could not be reasonably held that she was in the employment of the defendant-employer during such period of time as she was engaged in her own personal matters, or in domestic work. Not having regular hours of office work while in her home, it would be impossible to apportion the part of the day spent in her home between her employment and her personal duties. The facts found do not bring the plaintiff within any known exception to the rule that the ordinary contract of employment of a workman or an executive of a business whose area of employment is within defined limits cannot be regarded as in the course of his employment 'while going to and returning from work upon the public highways.' Employees of any business, of any degree, who carry work from their place of business to their home and there complete it, cannot be regarded as in the course of their employment during the period when they are engaged upon such work at their home, in the absence of an agreement, express or implied by the employer, that the employment shall continue during the period of such work. Nor can they be regarded as in the course of their employment when they are returning in the morning with the completed work to their place of employment any more than they could be so regarded when they are returning without work on other mornings. Nor could it be reasonably held that the employee was in the course of her employment while not doing such work in her home in the absence of such agreement or understanding, although not in such employment while doing

such work in her home. There would be so great a degree of uncertainty and unreliability in determining whether the employee was at any given time engaged in the employer's work while at home, as to make it wholly impracticable to make such a determination."

In the case of *Industrial Commission of Colorado* v. *Anderson* (1917), 69 Colo. 147, 169 Pac. 135, L. R. A. 1918 F, 885, where in some respects the facts were similar to the facts here, the court, in a well reasoned opinion in which many authorities are collected and reviewed, denied compensation.

Under the law as we find it to be, and the facts in this case, the accident causing Mrs. Dubbert's death did not arise out of and in the course of her employment.

In support of their contention, appellants have cited the cases of *Granite Sand, etc., Co.* v. *Willoughby* (1919), 70 Ind. App. 112, 123 N. E. 194, and *Livers* v. *Graham Glass Co.* (1932), 95 Ind. App. 358, 177 N. E. 359. Those cases do not aid appellants, while the principles of law there announced are correct, the facts to which they were applied were very different from the facts in the case at bar.

Counsel discuss two other propositions in their briefs, but because of the conclusion which we have reached, we do not deem it necessary to consider them.

Finding no error the award of the Industrial Board is affirmed.