HUNT ET AL. *v.* GASETERIA, INC.

[No. 16,053. Filed February 17, 1938. Rehearing denied April 19, 1938.]

*E. H. Stewart* and *Charles H. Foley,* for appellants.
*Rocap & Rocap,* for appellee.

KIME, J.—This is an appeal from an award denying appellant's application for compensation for the death of Alva W. Hunt (the husband of Julia E. and the father of the other appellants) which death was alleged to have been caused by reason of an accident arising out of and in the course of his employment by Gaseteria, Inc.

There were no special answers by the appellee. The parties stipulated that Hunt was in the employ of the appellee on December 31, 1936, the date of his death, that the appellants were his wife and children, wholly dependent upon him and with whom he was living at

such time. The uncontradicted evidence showed the average weekly wage to have been $25.37 and that the death resulted from carbon monoxide poisoning received by accident.

The board found for the appellee and that the death "was not due to any accidental injury arising out of and in the course of his employment."

The statutory assignment that the award is contrary to law presents the question on this appeal which was properly perfected.

The uncontradicted evidence discloses that Hunt was hired as a maintenance man who had no specific hours or regular time for reporting to work. He could go to any of the numerous stations of appellee to do any work he thought necessary whenever he determined that the mechanical equipment needed attention. It was necessary for him to check all electrical equipment twice yearly and keep the plumbing of all the stations of appellant in working condition. Also to *supervise* the installation of all tank equipment. In addition he was subject to call day or night and responded to such calls when made.

It was also necessary for him to have the tools furnished by the company with him at all times. In order that he could transport such tools and himself, upon call or at such times as he might deem necessary, the company hired an automobile for his particular and sole use. The car was a necessity and he used it daily. The appellee, for some reason not disclosed, preferred to hire a car to purchasing one of its own.

They hired this particular car from Hunt. It is this fact that seems to have caused the difficulty in the interpretation of this matter below. For two days prior to his death he had been supervising the installation of new tanks at one of the appellee's stations. He customarily left his house at 7:30 A. M. The night before

his death he determined, in the exercise of his discretion, that he should return to this particular new equipment installation job at an extraordinary early hour. He imparted this determination to an officer or employee of the appellee and to his wife.

On the morning of his death this hired man left his home and went to the hired car. He was discovered a short time later in the garage upon the property where he lived. His body was at the rear of the automobile with one of the large doors (necessary to the removal of the car) partly open and one closed. The motor of the machine was in operation. A small door in the garage was also open and the electric lights were not on. The appellee's tools were in the hired car. This is all the necessary material evidence.

It also appears that Hunt had told his wife it would be unnecessary for her to arise at 5:30 A. M. for the purpose of preparing his breakfast as he would secure breakfast across the street from his work. The appellee contends that this is important in that it shows that Hunt had not entered upon the discharge of his duties. It is conclusive, as both parties contend, that from such uncontradicted evidence the question here is one of law.

Hunt, in the exercise of his discretion (as supervisor of installation of new tanks) decided that such work necessitated his supervision at a particular hour. In pursuance of such determination the hired man went to the hired car, and began the process of delivering the hired car to the site of the day's work. He started the motor of the car which the master had hired for his convenience, and from that moment on he certainly was doing something to further his master's interest.

The master required the hired man to keep the hired car carrying the master's tools near by so that, in case an emergency arose or in case the supervisor (as he

was that day) determined, the car would be available. Hunt was thus charged with the specific duty of taking the car the master had hired to the place where it would be available for further use. He was found dead at a place where it would be necessary for him to be in the performance of that duty. There is no intimation of suicide and the presumption is against it. Since Hunt determined his own hours it was within his usual hours of labor and he was benefiting his master in the direct line of his specific contractual employment.

The logical conclusion and the only one to be drawn is that the injury which caused Hunt's death arose out of and in the course of the employment. The following cases support this conclusion: *Czuczko* v. *Golden Gary Co. of Ind.* (1932), 94 Ind. App. 47, 177 N. E. 466; *Livers* v. *Graham Glass Co.* (1932), 95 Ind. App. 358, 177 N. E. 359; *Lasear, Inc.* v. *Anderson* (1934), 99 Ind. App. 428, 192 N. E. 762; *Fisher* v. *City of Decatur* (1935), 99 Ind. App. 667, 192 N. E. 844; *Derleth* v. *Roach & Seeber Co.* (1924), 227 Mich. 258, 198 N. W. 948, 36 A. L. R. 472.

The award of the Industrial Board is contrary to law and is accordingly reversed with instructions to enter an award in favor of the claimants.

### DISSENTING OPINION.

BRIDWELL, J.—Notwithstanding the fact that I fully approve and agree with the often reiterated statement of this court, to the effect that our Workmen's Compensation Law should receive a liberal construction in order that its beneficial purposes may be accomplished, I find myself unable to agree with the majority opinion herein.

There are certain facts established by uncontradicted evidence which, in my opinion, not only justified, but

made it obligatory upon the Industrial Board to render the finding and award made.

The deceased employee was a "maintenance man"; had no specific hours, nor regular time at which he reported for work, but was subject to call day or night in case of mishaps occurring to any appliance used by his employer at any of its various "filling stations" from which it sold gasoline. "Generally he reported some time in the morning as to his whereabouts." (Appellant's brief.) His duties required of him that he check the meters at the various stations of his employer at least twice each year; that he give any needed attention to electrical equipment and plumbing, and that he supervise the installing of all tank equipment. In discharging some duties of his employment, it was necessary that he use an automobile and carry tools belonging to his employer from place to place as needed, when answering calls for his services at any of the stations operated by his employer. He, however, was not required to use his automobile as a means of transportation when reporting to the "main plant" for duty as was his intention on the day of his death. On this morning he arose early; informed his wife she need not arise to prepare his breakfast, as he would get it down on Madison Avenue. At the time he inhaled the monoxide gas which caused his death, he was on his own premises; in his own garage. He had not started, nor was he intending to answer any call or request for his services as "maintenance man" from his employer or any person in the employment of the Gaseteria, Inc., as there is no evidence that any such call had been received. To the contrary, it does appear from the evidence of his widow, and one other witness, that he intended on that day to complete some work at the "main plant" upon which he had been engaged the day before.

It would seem under these facts that the deceased

employee at the time of his death occupied the same status as would any employee who had not yet reached the premises of his employer, where he expected to enter upon the discharge of the duties of his employment.

An accidental injury to an employee while on the way to or from his work, or while, as in the instant case, he is making ready to start to his working place is incompensable under our compensation law. See *Boyd* v. *Chase* (1929), 89 Ind. App. 374, 166 N. E. 611; *Dubbert* v. *Beucus* (1933), 96 Ind. App. 390, 185 N. E. 311; *Mitchell* v. *Ball Bros. Co.* (1933), 97 Ind. App. 642, 186 N. E. 900. It is true that in this case the accident occurred during the *period of employment,* but it takes something more than this before compensation can be rightfully awarded. The death of the employee did not result from a risk reasonably incident to the employment. I see no causal connection between the two.

Even if it could be reasonably held under the evidence here that the fatal injury was received "in the course of the employment" (which I do not concede nor believe) it seems apparent that the Industrial Board was right when it found as a fact that the death was not occasioned by an accident "arising out of the employment." This court in *Union Manufacturing Company* v. *Davis* (1914), 64 Ind. App. 227, 232, 115 N. E. 676, after reviewing certain cases discussing these questions, said:

> "In other cases it is held that an injury arises 'out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person, familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a con-

tributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." (Authorities cited.)

It is my judgment that, under the facts proven and the prior decisions of this court, the award of the Industrial Board should be affirmed, and I, therefore, respectfully dissent.

Dudine, P. J., concurs in this dissent.