STATE of Alaska, DEPARTMENT OF HIGHWAYS, and Employers Liability Assurance Corporation, Appellants,

v.

Harry A. JOHNS, Applicant, and the Alaska Workmen's Compensation Board, Appellees.

No. 718.

Supreme Court of Alaska.

Jan. 20, 1967.

James K. Singleton, Jr., Delaney, Wiles, Moore & Hayes, Anchorage, for appellants.

William M. Erwin and John M. Savage, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

RABINOWITZ, Justice.

The central issue in this appeal is whether the superior court correctly upheld the Alaska Workmen's Compensation Board's decision that appellee Johns' injuries arose out of and in the course of his employment. We affirm.

In R. C. A. Serv. Co. v. Liggett[1] this court adopted the rule that

> injuries occurring off the employer's premises while the employee is going to or coming from work do not arise in the course of his employment.

At the same time it was recognized that:

> There are of course exceptions to the rule, one of them being the 'special er-

1. 394 P.2d 675, 677-678 (Alaska 1964).

rand' exception. But even in the case of a special errand the explanation of the exception is found in the principle that the journey is an inherent part of the service, and as stated by Professor Larson, that it 'involves a trip in which the bother and effort of the trip itself is an important part of what the employee is actually compensated for.'[2]

The narrow issue raised by this appeal involves the applicability of the going-and-coming rule. After a hearing, the Board rendered a decision in which it concluded "that Harry A. Johns was seriously injured while in the course and scope of his employment as an employee of the State of Alaska * * *."[3] Appellants then filed both an injunction action and a notice of appeal in the superior court.[4] The crux of appellants' appeal to the superior court was that appellee Johns' injuries did not come within the purview of our compensation act.[5] The superior court heard the matter on the record and entered a judgment affirming the decision of the board.[6] This appeal followed.

The evidence which was brought forth at the hearing before the Board revealed the following. Edwin Church, supervisor of the State of Alaska, Department of Public Highways' Ernestine Camp, located at Mile 47 on the Richardson Highway,[7] testified that: On October 12, 1964, the day of the accident, Johns lived a distance of fifty-four miles from Ernestine Camp. Three days prior to the accident he had made arrangements through his supervisor George Peterson, in Glenallen, to obtain additional help for the Ernestine Camp. Church's understanding was that Johns was to live at home and

was to drive to and from work with his own automobile and would be furnished gasoline for the amount of driving he would do * * * back and * * * forth.

Church testified that this arrangement was necessary because "there was no available place to live there [at Ernestine Camp] at the time," and that Johns was selected because, of all the state employees residing in the Glenallen area, he was the one who lived the closest to Ernestine Camp.

Church's testimony also established that October 12 was Johns' first day on the job at the camp. On that day Johns arrived slightly after 8 a. m. and worked until 4 p. m. hauling gravel.[8] Johns then left the campsite at the same time his fellow workers did. Prior to his departure Church provided Johns with ten gallons of state gasoline. After Johns had traveled

2. Id. at 678. (Footnotes omitted)

3. In its decision the Board also found: That at the time of the hearing of this matter, Harry A. Johns was [temporarily] * * * totally disabled and has been since the date of his injury and the degree if any of any permanent disability of Harry A. Johns could not be established at the time of hearing.

4. See Aleutian Homes v. Fischer, Opinion No. 365, 418 P.2d 769 (Alaska 1966).

5. More particularly, appellants alleged in their complaint for injunction that:
Defendant Johns was not injured while in the course and scope of his employment nor did his injury arise out of his employment with the Alaska State Highway Department.

6. In its findings of fact, the superior court specifically found

that the decision of the Alaska Workmen's Compensation Board that the defendant Harry Johns was in the course and scope of his employment for the State of Alaska at the time of his injury is supported by substantial evidence on the whole record before the Alaska Workmen's Compensation Board when that decision was made.
In addition to affirming the Board's decision, the superior court remanded the case to the Board
for further consideration on the aspects of this case concerning the period of time of temporary total disability and the permanent disability rating of the defendant, Harry Johns, if any.

7. The location being forty-seven miles from Valdez, Alaska.

8. Church further testified that normal working hours at Ernestine Camp were from 8 a. m. until 4 p. m.

approximately three miles from Ernestine Camp, a tire on his car went flat. Not having a spare, Johns hitched a ride with a military vehicle back towards Ernestine Camp to obtain help. At approximately a mile and one-half from the camp the vehicle in which Johns was riding left the highway and crashed.

Church's testimony also established that Johns was a permanent employee of the Department of Highways. In this regard Church testified:

> You see he wasn't temporary hire, he was permanent hire by the State of Alaska. And he was stationed at Glenallen. Normally the case is that when a person is stationed at a duty station, and he is required to work at another station, he is given per diem, living allowance and he is required to live there within range and be on duty at 8 o'clock and quit at 4. That's the normal situation.

The only other witness to testify at the hearing before the Board was George F. Peterson, whose position was maintenance supervisor for the Department of Highways at Glenallen where Johns was stationed as a permanent employee.[9] Peterson testified that on the Friday preceding the Monday accident he had received a call from Church stating he needed additional help at Ernestine Camp "in order to get the roads in condition so that we [could] * * * maintain [them] * * * in the wintertime * * *." Peterson then spoke to Robert Marshall, foreman at Glenallen, and asked if he could spare an extra man, preferably Johns because

> Harry was the only one of our employees that lived at Copper Center * * * in other words, between our two camps, he would be the best one to get * * * taking into consideration that we had no place where he could stay * * * either in the camp or any place * * * a

roadhouse or one thing or another near there.

> \* \* \* \* \* \*

> And I wanted to try to work out someone who could commute.

As to the day in question, Peterson told Johns to report to Ernestine Camp at 8 a. m. Concerning Johns' future commutations Peterson testified that Church was authorized to make any agreement with Johns he thought best concerning travel time. Peterson's understanding was that part of the time Johns was required to travel to and from his home at Copper Center to the job site was to be on state time, and that the specific details of such an arrangement were to be worked out by Johns and Church.[10]

Peterson testified that he had explained to Johns that they might be able to get him per diem but that this would be difficult because of administrative delays and because of the fact that he thought Johns would be working at Ernestine Camp for only a matter of a day or two. Peterson also stated that if the work at Ernestine Camp lasted as long as a week he would obtain mileage for Johns.[11] Church testified that he had no idea why Johns was not given the normal twelve cents per mile for the use of his vehicle or "why they didn't pay Johns per diem."

At the hearing before the Board, counsel stipulated that Johns would have testified, if he could have been present, that he was asked if he would go to Ernestine Camp for approximately one week's work; that Peterson informed him he would have to commute and would get gasoline for his automobile because there was no place for him to live at Ernestine Camp; that it was his understanding that he was to be at Mile 47 Camp at 8 a. m. Monday and that half of his commuting time "was to be on his own time and half was to be on the State's time"

9. Johns' status at Glenallen was that of an "automotive equipment operator."

10. At another point in his testimony Peterson admitted that he had previously stated that the first one-half hour at

the end of Johns' work day was intended to be on state time.

11. Peterson testified that the reason for this was that "I didn't like this gasoline business because it could backfire."

and that he understood that "he was to be released earlier in the afternoon for [him] to make up the part that was to be on the State's time in order to get back to his home in Copper Center."

The hearing before the Board also established that the round trip mileage from Johns' home near Copper Center to his permanent duty station at Glenallen was twenty-eight miles compared to a round trip of 114 miles between his home and Ernestine Camp, and further compared to a round trip distance of sixty-eight miles between Johns' home and the actual job site out of Ernestine Camp.[12]

In Voehl v. Indemnity Ins. Co.,[13] Chief Justice Hughes stated that the general rule pertaining to injuries sustained by employees when going to or returning from their regular place of work

> is subject to exceptions which depend upon the nature and circumstances of the particular employment. 'No exact formula can be laid down which will automatically solve every case.' * * * While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect

may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act.[14]

Our review of the record has led us to the conclusion that the going-and-coming rule which was adopted in Liggett[15] is inapplicable here. The record in this appeal demonstrates that appellee Johns' travel to and from Ernestine Camp in his own vehicle from his home in Copper Center was an inherent part of the temporary service that he had been requested to render to his employer, the Department of Highways, State of Alaska. It is uncontroverted that although Johns' permanent duty was at Glenallen, he was assigned to temporary duty at Ernestine Camp because of a shortage of help there, and because of the immediate necessity for completion of certain road work before freeze up. The evidence also discloses that there were no living quarters available at Ernestine Camp, or in the surrounding area, and that Johns was selected for this temporary assignment because he had his own means of transportation and because of the fact that, of all the Glenallen employees, his home was located the closest to Ernestine Camp.

In such circumstances we hold that there was substantial evidence to support both the Board's and the superior court's conclusions that the injuries Johns sustained while returning to his home from Ernestine Camp were connected with the incidents of his employment and therefore compensable.[16]

> In other words, if the accidental injury or death is connected with any of the incidents of one's employment, then the injury or death would both arise out of and be in the course of such employment.

See also Employers Liab. Assur. Corp. v. Dull, Opinion No. 355, 416 P.2d 821, 822 (Alaska 1966); Alaska Redi-Mix, Inc. v. Alaska Workmen's Compensation Bd., Opinion No. 359, 417 P.2d 595, 599 (Alaska 1966); Thornton v. Alaska Workmen's Compensation Bd., Opinion No. 327, 411 P.2d 209, 210 (Alaska 1966).

---

12. The job site gravel pit was located at Mile 70.

13. 288 U.S. 162, 169–170, 53 S.Ct. 380, 382–383, 77 L.Ed. 676, 680 (1933).

14. See generally 1 Larson, Workmen's Compensation § 16.10 (1965); 8 Schneider, Workmen's Compensation Text § 1712(c), 38, 39 (1951); Ross v. Marberry & Co., 66 N.M. 404, 349 P.2d 123 (1960); O'Reilly v. Roberto Homes, Inc., 31 N.J. Super. 387, 107 A.2d 9, 11 (1954).

15. 394 P.2d 675, 677–678 (Alaska 1964).

16. In Northern Corp. v. Saari, 409 P.2d 845, 846 (Alaska 1966), we said:

In our view, the facts establish that Johns' travel to and from the situs of his temporary duty assignment was a hazard of his temporary employment. Therefore, we believe that Johns' case falls within the special errand exception to the judicially established going-and-coming rule. In regard to this exception Professor Larson wrote:

The special errand rule may be stated as follows: When an employee, having indentifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.[17]

■ Here the urgency which necessitated Johns' temporary duty assignment was that of his employer. Johns' ability to commute (and proximity to) the job site was determinative in his selection for this temporary assignment and was also a paramount qualification from his employer's point of view. We believe that the trouble, time and special inconvenience encountered by Johns in traveling to his home on the first day of his temporary employment at Ernestine Camp was an integral part of his employment and came within the special errand exception to the going-and-coming rule. We therefore hold that the Board's decision and the superior court's affirmance are supported by substantial evidence establishing that at the time he was injured Johns was engaged in performing a special errand for his employer.

■ Additionally, we are of the opinion that the facts here bring Johns within another exception to the going-and-coming rule. It is established that if the employee is compensated for the time he has spent in going to or coming from his place of employment, then such travel is considered to be within the scope of his employment.[18] As to this exception, Professor Larson states:

Another type of case in which this sort of allowance is found is the situation in which the work is to be performed at some rather remote place, and in order to induce men to work at that distance from their home, it is necessary to pay them for the time consumed by travel.[19]

In such circumstances compensation is awarded on the grounds that the employer, by paying his employees for travel time, impliedly agreed that the employment relationship was to continue during travel.[20] In regard to this exception, the superior court found that the Department of Highways had

agreed to give Harry Johns gasoline from state sources for the extra mileage he had to drive in his own vehicle to and from Ernestine Camp and his previous place of employment and they further agreed to give Harry Johns time off from his work at Ernestine Camp * * *.[21]

■ We think that there is substantial evidence to support the conclusion that in order to induce Johns to take this temporary assignment at the relatively remote

17. 1 Larson, op. cit. supra note 14, § 16.10, at 253–54. See also authorities cited note 14 supra.

18. 1 Larson, op cit. supra note 14, § 16.20, at 266.

19. Id. at 268.

20. Martin K. Eby Constr. Co. v. Industrial Comm'n, 151 Colo. 320, 377 P.2d 745 (1963); Serrano v. Industrial Comm'n, 75 Ariz. 326, 256 P.2d 709 (1953); Kobe v. Industrial Acc. Comm'n, 35 Cal.2d 33, 215 P.2d 736 (1950).

21. In its decision the Board found: That the State of Alaska further promised Harry A. Johns that he would be given an extra one hour and one-half per day from his work time with pay to make the extra 114 miles drive at the convenience of the State of Alaska because there was no adequate lodging at 47 Mile Camp for Harry A. Johns.

location of Ernestine Camp, his employer had agreed to pay him for at least some portion of the time he would necessarily have to spend commuting. Johns' own understanding was that half of his commuting time "was to be on the State's time." Neither Church's testimony nor Peterson's contradicts what Johns thought he was to receive in regard to a travel time allowance. From Peterson's testimony it is apparent that the Department of Highways contemplated that Johns would be compensated in some fashion for his travel time.

■ Appellee correctly argues that the record must demonstrate the employer had agreed to compensate his employee for the particular trip in question or else the going-and-coming rule remains applicable. Appellee further argues that this is precisely the situation in the case at bar since Church's testimony revealed that he was unable to finalize travel time arrangements with Johns on his first day at work at Ernestine Camp because of certain logistic problems, but that he intended to work out a schedule with Johns the next day. In our view, Church's testimony does not negate the fact that it was intended and understood between Johns and his employer that Johns was to be compensated in some manner for the transportation he was furnishing and the extra mileage he was required to travel incident to his temporary employment assignment. From a study of the whole course of dealings between Johns and his employer, we find that it is a reasonable inference that the Department of Highways had agreed with Johns that he would be compensated for some portion of his travel time. The fact that the supervisor of the Ernestine Camp had not worked out a schedule in regards to Johns' future trips to and from Ernestine Camp does not vitiate the obligation the Department of Highways had incurred to compensate Johns for some portion of his travel time while on this temporary duty assignment.[22]

■ Inherent in the foregoing is our conclusion that at the time he was injured Johns had not substantially deviated from the course of his employment.[23] At the time of injury Johns was in the process of returning to Ernestine Camp so he could obtain assistance in order to make operative the transportation which he was required to furnish in traveling to and from Ernestine Camp.

Affirmed.

22. Professor Larson writes in 1 Larson, op. cit. supra note 14, § 16.20, at 269:

Although a demonstration that travel time was specifically paid for is one of the most reliable ways of making a case for the compensability of a going or coming trip, and is ordinarily sufficient in itself to support such a finding, the fact that the employee is *not* paid for his travel time does not mean that the trip was *not* in the course of employment.

In support of the text, Pittsburgh Testing Labs v. Kiel, 130 Ind.App. 598, 167 N.E.2d 604, 606-607 (1960), is cited. In that case the court said:

Where the use of an employee's vehicle is an integral part of the employment, injuries incurred while taking it to and from work are compensable. Thus, in the case of Hunt v. Gaseteria, Inc., 1938, 105 Ind.App. 197, 12 N.E.2d 992, our Court held that where a maintenance man was asphyxiated in his own garage while preparing to go to work, his death was compensable under the Workmen's Compensation Act. It makes no difference if the employee is or is not specifically reimbursed for the cost of transporting his own vehicle to and from work. In the case of Stadler Fertilizer Co. v. Bennett, 1954, 124 Ind.App. 524, 119 N.E.2d 26, our Court held that where an employee was killed while returning home from a distant work site in his own vehicle, that his death was compensable under the Workmen's Compensation Act on the theory that the use of the vehicle was necessary to suit the convenience of the employer.

23. On the general subject of deviations from course of employment, see 1 Larson, op. cit. supra note 14, § 19.